Roger W. KREIMEYER, et al., Plaintiffs,

v.

**HERCULES INC., a Delaware corporation, and Jon Peterson, Defendants.**

No. 92–NC–088S.

United States District Court,
D. Utah,
Northern Division.

July 28, 1994.

Fred R. Silvester, Silvester & Conroy, L.C., Salt Lake City, UT, Claudia F. Berry, J. Michael Hansen, Mark R. Gaylord, Charles P. Sampson, Suitter, Axland & Hanson, Salt Lake City, UT, William K. Nash, Richard E. Malmgren, W. Robert Wright, Holme Roberts & Owen, Salt Lake City, UT, Evan A. Schmutz, Hill Harrison Johnson & Schmutz, Provo, UT, Lawrence R. Dingivan, Purser Edwards & Shields, Salt Lake City, UT, for plaintiffs.

Keith E. Taylor, David A. Anderson, Michael A. Zody, W. Mark Gavre, Lois A. Baar, Parsons Behle & Latimer, Salt Lake City, UT, Brent H. Shimada, Hercules Inc. Bacchus Works, Magna, UT, John M. Crane, Jr., Brent E. Zepke, Hercules, Inc., Wilmington, DE, for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AGAINST ERMA G. THOMPSON

SAM, District Judge.

This age discrimination action came before the court on the defendants' motion for summary judgment against one of the 65 plaintiffs, Erma G. Thompson ("Thompson"). For reasons discussed more fully below, the motion is granted in part and denied in part.

### I. Background

The defendants filed their motion for summary judgment, supported by a memorandum and exhibits, on June 1, 1993. They argued that Thompson's age discrimination claim should be dismissed because: (1) there is no evidence that her age played any part in the decision to terminate her employment, and (2) she failed to file a timely administrative charge of age discrimination. The defendants also argued that Thompson's implied contract claim should be dismissed because she testified in her deposition that her only claim was one for age discrimination.

Thompson filed a memorandum in opposition, together with affidavits and other exhibits, but argued that more discovery was needed before she could adequately respond to the defendants' assertion that there is no evidence that her age played any part in the decision to terminate. She explained that she had not yet taken the deposition of her former supervisor, Larry Taylor, co-workers in the same department where she was employed, or other employees with knowledge of the circumstances of her termination. (¶¶ 5-7, Affidavit of Claudia F. Berry.)

The defendants filed a reply memorandum on July 28, 1993. They conceded that there are genuine issues of material fact as to whether Thompson filed a timely administrative charge. (Reply memorandum at 1 n. 1.) However, they insisted that further discovery

would be a useless "fishing expedition" because Thompson could not establish a prima facie case of age discrimination or show that the defendants' stated reasons for terminating her were pretextual.

The discovery deadline was extended to August 1, 1994.

## II. Standards for summary judgment

Summary judgment is proper where the pleadings and other documents of record "show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court must construe all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

A party seeking summary judgment always bears the initial burden of identifying the evidence which it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). However, once the moving party has carried its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553 (quoting Fed. R.Civ.P. 56(e)). The nonmoving party may not merely rely on the pleadings but must *make a sufficient showing to establish the existence of an element essential to that party's case,* and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552 (emphasis added).

All material facts asserted by the moving party are deemed admitted unless specifically controverted by the opposing party. D.Utah R. 202(b)(4). Nevertheless, the opposing party may submit an affidavit stating the reasons why he or she cannot present the necessary evidence. Fed.R.Civ.P. 56(f). Upon a proper showing, the court may "order a continuance to permit ... depositions to be taken or discovery to be had." *Id.* It is not enough merely to assert that the necessary evidence is in the hands of the moving party; the opposing party must show how additional time will enable him or her to rebut the moving party's allegations. *Patty*

*Precision v. Brown & Sharpe Mfg. Co.*, 742 F.2d 1260, 1264 (1984).

On a motion for summary judgment, the court does not weigh the evidence. Instead, the court inquires whether a reasonable jury, faced with the evidence presented, could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. at 2510.

## III. Material facts

The "undisputed material facts" set forth in the defendants' memorandum and supported by exhibits, may be summarized as follows:

1. Thompson's employment with the defendant Hercules, Inc. ("Hercules") was terminated on April 8, 1991, as part of a reduction in force.

2. She was 45 years old.

3. She was an overhead buyer in the Tooling, Facilities, Services and Overhead Acquisition Department.

4. She reported to lead buyer Laura Thompson who, in turn, reported to the department manager, Larry Taylor ("Taylor").

5. In 1987 Taylor was instructed to rank the employees in his department, based on their performance.

6. Taylor directed Laura Thompson to do an initial ranking, which he reviewed. They agreed that [Erma] Thompson was the least competent of the overhead buyers.

7. In 1989 a similar ranking was made by Taylor and Laura Thompson. Again, they agreed that [Erma] Thompson was the least competent.

8. A similar ranking in 1990 had the same result.

9. In March 1991, Taylor was instructed to reduce the number of employees in his department by three.

10. Taylor chose Thompson for termination because she had consistently been

ranked as the least competent of the overhead buyers.

11. Taylor's recommendation that Thompson be terminated was reviewed by the Hercules Policy Compliance Committee ("PCC").

12. The PCC approved Taylor's recommendation.

13. On April 8, 1991, Taylor informed Thompson of her termination.

14. All but one of the six overhead buyers who worked with Thompson were older than she. Their ages were 58, 51, 55, 62, 48. The only younger employee, Deeray Nielsen, was 32.

15. Taylor (age 52) and Laura Thompson (age 53) were both older than [Erma] Thompson.

16. At the time of her termination, Thompson's duties were to purchase certain overhead items.

17. After Thompson's termination, these duties were reassigned to employees who were older than Thompson.

18. None of Thompson's duties have been assigned to the younger employee, Deeray Nielsen.

. . . . .

22. Thompson was asked at her deposition whether "all you're claiming against Hercules is that they discriminated against you in violation of the age act?" She answered, "Correct."

(Memorandum in support of motion at 3–7).

Thompson responded that "Taylor's self-serving statements [in ¶¶ 5–12] have yet to be tested in discovery." (Memorandum in opposition at 3.) As to Taylor's statement that he was directed to reduce his employees by three, she complains that Taylor supervised employees in three separate areas and that she does "not yet know how the three individuals who were terminated were chosen." *Id.* As to the reassignment of her duties, Thompson denies having sufficient information but alleges that a new employee, Robert Jones, assumed some of her duties.

Finally, as to her implied contract claim, Thompson explained that her deposition testimony was taken out of context:

> [W]e had just been talking about handicap versus age discrimination. I thought we were still talking about whether I was bringing a handicap discrimination charge in this suit. I responded that I was only bringing a claim for age discrimination. I am aware, of course, that this lawsuit is for breach of contract in addition to age discrimination and I believe that Hercules did not take my seniority and experience into account, in violation of its own policies.

(¶¶ 13 & 14, Affidavit of Erma G. Thompson).

The defendants then submitted additional "material facts" which Thompson has not disputed. Those facts may be summarized as follows:

1. The department in which Thompson worked consisted of three groups: Special Tooling Buyers, Facility Construction Buyers, and Overhead Procurement Buyers. All three groups reported to Taylor.

2. In response to an effort called Operations Profitability Improvement ("OPI"), Taylor recommended that his department be downsized by three positions, and his recommendation was approved.

3. Taylor decided that the three positions would be in the Overhead Procurement Buyers group because his department could better afford losing employees from that group than any other.

4. Taylor decided to terminate two overhead buyers and the secretary for the overhead buyers' group. The two overhead buyers who were terminated were 44 & 58 years old.

5. The secretary who was terminated was 33 years old.

6. As part of the OPI effort, Taylor recommended that an overhead buying group in Clearfield, Utah, be combined with the Overhead Procurement Buyers in his department. This consolidation took place in April 1991.

7. Two of the three overhead buyers in the Clearfield group were laid off. They were 35 & 36 years old. The third, Robert Jones, age 55, was transferred into the Overhead Procurement Buyers group under Taylor.

8. At her deposition, Thompson was asked:

Q: And I assume from what you've said that the reason you filed Exhibit 2 [charge

of age discrimination] and this lawsuit is that you believe that Hercules, in making up its mind in terminating you rather than one of these other folks that stayed, [was] motivated by your age, not you ability; is that correct?

She replied:

A: Not chronological age as much as length of service and the amount of money that I was making.

(Thompson Depo. at 107).

## IV. Discussion

### A. ADEA claim

■ Claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621–634, are "subject to the same indirect method of proof used in Title VII cases alleging discriminatory treatment." *Branson v. Price River Coal Co.*, 853 F.2d 768, 770 (10th Cir.1988). For the indirect method of proof, plaintiffs must present a *prima facie* case of employment discrimination and must show that any legitimate non-discriminatory reasons the employer gave for its actions are merely pretexts for age discrimination. *Id.*

■ To prove a *prima facie* case of age discrimination, a plaintiff must show that she was "(1) within the protected age group; (2) adversely affected by the defendant's employment decision; (3) qualified for the position at issue; and (4) replaced by a person outside the protected group." *Id.* In the context of a reduction in force, the fourth element is modified: the plaintiff may satisfy this element "through circumstantial evidence that the plaintiff was treated less favorably than younger employees during the reduction-in-force." *Id.* at 771.

■ Thompson has not shown, even through circumstantial evidence, that she was treated less favorably than younger employees. At age 45, she was the second youngest of the seven overhead buyers in the Overhead Acquisition area, and her duties were reassigned to overhead buyers who were older than she was. (*See* Exs. C & D to Memorandum in Support of Motion.) There is no evidence that any of her duties was ever given to a younger employee. In addition, the two supervisors responsible for the termination decision, were both older than Thompson.

Thompson admitted in her deposition that the reason for her termination was "not chronological age as much as length of service and the amount of money that I was making." (Ex. A to memorandum in support of motion, Thompson Depo. at 107.) This admission strongly suggests that the fourth element is not met in her case.

The Supreme Court recently addressed the "question whether an employer violates the ADEA by acting on the basis of a factor, such as an employee's pension status or *seniority,* that is empirically correlated with age." *Hazen Paper Co. v. Biggins,* —— U.S. ——, ——, 113 S.Ct. 1701, 1705, 123 L.Ed.2d 338 (1993) (emphasis added). The court clarified that "there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age." *Id. See also Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1087 (3rd Cir.1992) (finding no support for the proposition that the ADEA protects an employee from an adverse employment decision based on seniority, even if it cannot be demonstrated that chronological age was a factor); *Williams v. General Motors Corp.,* 656 F.2d 120, 130 n. 17 (5th Cir.1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982) ("The ADEA targets discrimination against employees who fall within a protected age category, not employees who have attained a given seniority status").

Even if Thompson could point to evidence which creates a factual dispute as to the fourth element, she would still need to "raise a fact issue on whether defendants' proffered reasons for discharge were a pretext for age discrimination." *MacDonald v. Eastern Wyo. Mental Health Center,* 941 F.2d 1115, 1122 (10th Cir.1991). Hercules' proffered reason for the discharge was a reduction in force which it implemented in Thompson's department by eliminating three positions and combining the Overhead Acquisition area with a similar area from its Clearfield offices. (*See* Ex. B to memorandum in support of motion, Affidavit of Larry Taylor, ¶¶ 8–11; and Ex. 1 to reply memorandum, Supplemental Affidavit of Larry Taylor, ¶ 5 & 7–9.) In

addition, Hercules submitted evidence that Thompson's job performance had been ranked on three separate occasions during the five years preceding her termination: in 1987, 1989, and 1990, and that on each occasion, her supervisors ranked her as the least competent performer. (*See* Ex. B to memorandum in support of motion, Affidavit of Larry Taylor, ¶¶ 5–9; and Ex. A to reply memorandum, Performance Rating Sheet.)

██ Thompson argued that she needed more time to discover the evidence necessary to satisfy the fourth element and to show that Hercules' proffered reasons were a pretext. A year has now passed since the defendants' reply memorandum was filed, and discovery has proceeded during that time. Thompson has been given considerable time in which to conduct further discovery and has been notified that the court is prepared to rule on this motion, but she has not brought any additional, relevant facts to the court's attention.

For these reasons, the court concludes that the defendants are entitled to summary judgment on Thompson's ADEA claim.

### B. Contract claim

██ The defendants are not entitled to summary judgment on Thompson's implied contract claim. She explained that her deposition testimony to the effect that she was only raising an ADEA claim, was taken out of context; the import was that she was not alleging any other kind of discrimination.

### V. Conclusion

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment is granted as to Thompson's ADEA claim but denied as to Thompson's implied contract claim.