45 F.3d 425
 Pens. Plan Guide P 23908E
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Margaret Ann Borza, and all others similarly situated,
Plaintiff-Appellant,
and
Issie JENKINS; Patricia Horvath, Parties in Interest,
v.
HALLMARK CARDS, INCORPORATED, t/a Ambassador Cards; Jerry
Klein, District Manager, Defendants-Appellees.
Margaret Ann BORZA, and all others similarly situated,
Plaintiff-Appellant,
and
Issie JENKINS; Patricia Horvath, Parties in Interest,
v.
HALLMARK CARDS, INCORPORATED, t/a Ambassador Cards; Jerry
Klein, District Manager, Defendants-Appellees.
Patricia HORVATH, Plaintiff-Appellant,
v.
HALLMARK CARDS, INCORPORATED, t/a Ambassador Cards; Doug
McClure, Defendants-Appellees.
 Nos. 94-1092, 94-1268, 94-1269.
 United States Court of Appeals, Fourth Circuit.
 Argued: November 1, 1994.
Decided: January 10, 1995.
 
 Appeals from the United States District Court for the District of Maryland, at Baltimore. Frank A. Kaufman, Senior District Judge. (CA-92-240, CA-94-13)
 ARGUED: Walter Theodore Charlton, Arlington, VA, for Appellant. Jana Howard Carey, VENABLE, BAETJER & HOWARD, Baltimore, MD, for Appellees. ON BRIEF: Todd James Horn, VENABLE, BAETJER & HOWARD, Baltimore, MD, for Appellees.
 D.Md.
 AFFIRMED.
 Before MURNAGHAN, NIEMEYER, and MOTZ, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Margaret Ann Borza and Patricia Horvath filed these actions on behalf of themselves and others similarly situated, contending that Hallmark Cards, Inc., in discharging them, discriminated against them by reason of their age and seniority in order to save the company the cost of higher salaries and benefits provided to older employees. Borza and Horvath allege violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 621 et seq., and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Sec. 1001 et seq.
 
 
 2
 Borza was discharged on August 27, 1985, from her employment at Hallmark Cards as a wholesale account coordinator. The company gave as its reason the fact that it had lost a major account, making it necessary to eliminate Borza's territory and effect a reduction in force. Borza was 47. After Borza was discharged, her remaining accounts were reassigned to two other younger persons. Borza had been employed by Hallmark Cards for 11 years, and at the time of her discharge, was performing her job adequately. Subsequent to discharging Borza, Hallmark Cards gave her a favorable letter of reference, stating:
 
 
 3
 Margie [Borza] has always demonstrated an excellent work ethic and had a good working relationship with her accounts and peer group. She always had a positive attitude during her tenure with the company.
 
 
 4
 Margie was a valued employee of this Corporation and would be rehired if the opportunity was available.
 
 
 5
 Borza believed that she was discharged by Hallmark Cards because she was approaching retirement and because she believed that the company discharged older people with vested benefits to save money. Following her discharge, Borza spoke with other employees at Hallmark Cards and learned that other older employees, who had been terminated by Hallmark Cards, were replaced by younger persons. In December 1985, she filed a complaint with the Prince George's County Human Relations Commission in which she alleged that even though Hallmark Cards had stated that it was terminating her "because of the loss of the Safeway Stores" and that "it was necessary to eliminate one territory within our district," the true reason for her discharge was that "she was getting close to the retirement age and [Hallmark Cards] was looking to replace her with a younger person that would save the company monetarily in salary and retirement benefits." Following a hearing, the Prince George's County Human Relations Commission found that because of the geographical location of the lost account, three account coordinators were candidates for discharge, Borza and two other women, ages 46 and 43. The Commission found that Borza was selected because of her location and performance:
 
 
 6
 [Hallmark Cards'] review of the proximity and evaluations made [Borza] the likely candidate [for discharge], inasmuch as she was further from the clients, and her ratings were "Good," while her co-workers were "Very Good." Further, [Borza] had been placed on probation in 1983 (based on a Fair rating in 1982), while one of her counterparts was named Regional Account Coordinator of the Year.
 
 
 7
 The Commission noted that Borza was eligible for rehire by Hallmark Cards but was not subsequently rehired because after Borza left her job, three deficiency reports were received in connection with her accounts involving her failure to return stock and make credits in an amount totaling more than $5,000. The Commission concluded that "no reasonable cause" existed to believe that Borza was discharged because of her age.
 
 
 8
 Borza thereafter filed suit in the district court, alleging that Hallmark Cards engaged in a pattern and practice of "terminating older employees who have attained higher salary earnings and benefit levels and replacing these older employees, by reason of their age, with less qualified, less senior and younger persons." She alleged further that this practice was undertaken in conjunction with "a company-wide policy whereby the substantial future fringe benefits, which are protected by ERISA for those employees terminated, are re-distributed to the executive level employees remaining at Hallmark." She brought her action under the ADEA, 29 U.S.C. Sec. 623, and under ERISA, 29 U.S.C. Sec. 1140.
 
 
 9
 Horvath resigned from Hallmark Cards on April 27, 1993, under pressure brought about by negative comments about her performance, conflicting directives from her superior, and "continuing criticism." She was 51. She acknowledges that after almost a year of criticism about her performance, she received an advance copy of an unsatisfactory performance report notifying her that she "would be placed on a confidential probationary period of three months." She acknowledges also receiving a reprimand for the way she hired an employee. Because she disagreed with some of the evaluations and felt that she was being singled out for criticism, she concluded, "I could no longer stand the abuse and I resigned as implied by their conduct." Believing that she was constructively discharged so that Hallmark Cards could "divert from me to Hallmark executives the very large benefits to the remaining executives resulting from transfers of otherwise payable Bonuses, Profit Sharing and Pensions from employees who are discharged or forced to resign, to executives who remain," she filed suit in the district court. The complaint, which parallels Borza's, was consolidated with Borza's complaint.
 
 
 10
 Considering the complaints of both Borza and Horvath, the district court granted Hallmark Card's motion for summary judgment and entered judgment for Hallmark Cards on both complaints in the consolidated action.
 
 
 11
 The district court dismissed the ADEA claims because the allegations that older employees were terminated by Hallmark Cards to avoid paying them higher salaries and benefits failed, by reason of Hazen Paper v. Biggins, 113 S.Ct. 1701 (1993) (noting that an employee's discharge to prevent pension benefits from vesting was based on seniority and not age), to state an age discrimination claim. The court observed that any allegation made in the complaint that characterized such a termination as "age based" disparate treatment was conclusory. Moreover, efforts by Borza and Horvath to allege disparate impact claims under the ADEA also could not succeed because no facially neutral practice was identified that impacted older persons as a group more harshly than younger persons as a group. As the court stated in addressing Horvath's disparate impact allegations:
 
 
 12
 Ms. Horvath does not, and indeed cannot, point to a neutral employment practice used by defendant which adversely affects older employees. Rather, her claim of constructive discharge is a claim of disparate treatment, i.e., it requires proof of specific intent to discriminate on the part of the employer.
 
 
 13
 Without deciding whether a disparate impact claim could state a cause of action under the ADEA, the court concluded that in any event one had not been alleged. Finally as to Horvath only, the court stated that she had failed to file a prerequisite claim with the EEOC.
 
 
 14
 While the court recognized that Borza and Horvath could allege causes of action under section 510 of ERISA, it nevertheless dismissed those claims also. Because Borza was discharged in August 1985, her complaint filed in January 1992 was barred by the applicable three-year statute of limitations. See Dameron v. Sinai Hospital of Baltimore, Inc., 815 F.2d 975 (4th Cir.1987). Moreover, the court concluded that Borza's earlier filing of her ADEA claim did not toll limitations for purposes of filing an ERISA claim.
 
 
 15
 While Horvath's ERISA complaint was not barred by the statute of limitations, it was found to be speculative because the undisputed evidence submitted by Hallmark Cards demonstrated that Hallmark Cards' executives did not monetarily benefit from Horvath's resignation or from the resignation of any employee, contrary to Horvath's allegations. Hallmark Cards' employees, including its executives, were members of a defined benefit plan through which an employee who retires after 65 receives an annual retirement benefit equal to one percent of the employee's career earnings at Hallmark Cards, payable monthly. Thus, under the plan, one employee's pension benefits did not increase by the termination of another. The court also concluded that the facts presented by Horvath concerning her employer's treatment of her performance did not amount to a constructive discharge under applicable authority. In order to support a claim of constructive discharge, Horvath was required to allege (1) deliberateness of Hallmark Cards' actions aimed at bringing about her resignation and (2) the objective intolerability of the working conditions at Hallmark Cards. See Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir.1985), cert. denied, 475 U.S. 1082 (1986). The court concluded that Horvath had alleged neither element. While Horvath described numerous incidents in which she was rebuked for performance deficiencies, she acknowledged that these incidents were attributable to her performance. Further, she admitted that when she left her employment, her working conditions were "fair" and she would recommend Hallmark Cards, "with reservation," to a friend as a place to work. The frustrations, criticism, and confusion from conflicting instructions which she described were held not to amount to a constructive discharge under the Bristow standard.
 
 
 16
 We have reviewed carefully the record and considered the arguments of the parties advanced in their briefs and at oral argument. We have reviewed the legal conclusions applied by the district court to the undisputed facts, taking the facts in a light most favorable to the plaintiffs, and find no error. Thus, for the reasons given by the district court in its memoranda granting summary judgments in these consolidated cases, see Borza v. Hallmark Cards, Inc., Civil No. K-92-240, and Horvath v. Hallmark Cards, Inc., Civil No. K-94-13, in the United States District Court for the District of Maryland, we affirm.
 
 AFFIRMED