## Walter F. BIGGINS

v.

## The HAZEN PAPER CO., et al.

### Nos. 290, 312.
### Civil Action No. 88–0025–MAP.

United States District Court,
D. Massachusetts.

July 19, 1996.

---

Maurice M. Cahillane, Jr., John J. Egan, Egan, Flanagan & Cohen, P.C., Springfield, MA, for Walter F. Biggins.

Robert B. Gordon, John H. Mason, Ropes & Gray, Boston, MA, Philip J. Callan, Jr., Robert L. Leonard, Doherty, Wallace, Pillsbury & Murphy, Springfield, MA, for Hazen Paper Co., Robert Hazen and Thomas Hazen.

*MEMORANDUM REGARDING PLAINTIFF'S MOTION FOR EXECUTION TO ISSUE ON PLAINTIFF'S JUDGMENT FOR ATTORNEY'S FEES AND TO RESOLVE OUTSTANDING FEE PETITION AND DEFENDANTS' MOTION FOR RELIEF FROM JUDGMENT REGARDING ATTORNEYS FEES*

PONSOR, District Judge.

## I.  INTRODUCTION

Following a trial leading to judgment for the plaintiff on April 5, 1991, an appeal to the First Circuit Court of Appeals, a further review by the United States Supreme Court with remand, reconsideration by a panel of the First Circuit Court of Appeals, rehearing by the First Circuit Court of Appeals sitting *en banc* and a second trial on a portion of the original case before this court, plaintiff now seeks judgment on the attorneys' fees and costs award made to him following the original trial and first appeal, as well as a ruling on a pending supplemental fee application for work done after the first jury verdict and prior to the first appeal.

For the reasons set forth below, the court will deny plaintiff's motion for execution and allow defendants' motion for relief, in part, amending the original judgment pursuant to Fed.R.Civ.P. 60(b)(5) and awarding a portion of the fee application still pending. The clerk will be ordered to enter judgment for plaintiff for attorneys' fees in the amount of $237,678.15 and costs in the amount of $11,477.03.

## II.  PROCEDURAL BACKGROUND

This case makes *Jarndyce* look like a slip and fall at the corner Dairy Mart.

The original complaint, filed in 1988, contained counts under the Age Discrimination in Employment Act ("ADEA") and the Employee Retirement Income Security Act ("ERISA"), as well as counts for wrongful deprivation of property rights, for wrongful discharge, for fraud, for conversion, for violation of the Massachusetts Civil Rights Act ("MCRA") and for breach of contract. In July of 1990, a trial in the District Court before then Chief Judge Frank H. Freedman resulted in verdicts for the plaintiff on all claims, except for wrongful deprivation of property rights and conversion. The jury awarded plaintiff damages in the amount of $560,775 on the ADEA count, $100,000 on the ERISA count, $1.00 on the wrongful discharge count, $315,098 on the fraud count, $1.00 on the MCRA count and $266,987 on the breach of contract count.

Following trial, on April 5, 1991, Judge Freedman issued a Memorandum and Order awarding plaintiff $175,564.57 in attorneys' fees and $9,760.07 in costs for prosecuting the case. In this memorandum, Judge Freedman awarded plaintiff his full claimed fees, despite the fact that only two of his counts, brought pursuant to ADEA and ERISA, permitted fee shifting. The court's rationale for this decision was that the various state law claims arose from a common core of facts and bore a close relationship to the federal claims. In awarding the full amount of fees, the court denied a motion by the plaintiff to enhance the fee award to $666,729.12 to reflect the risks and difficulty of the litigation. The award of fees and costs made by the district court in April 1991 was never appealed and has never been disturbed by any of the subsequent appellate proceedings.

Following the original trial, appeal was taken to the First Circuit. During the pendency of this appeal, on February 6, 1992, plaintiff submitted a supplemental fee application to the district court for $31,785.00 in fees and $1,716.96 in costs for work done after the jury verdict but prior to the appeal. This has never been substantively ruled on.[1]

On January 8, 1992, the First Circuit rendered its decision affirming the ADEA, ERISA, wrongful discharge and fraud judgments, but reversing the jury's breach of contract verdict. The Court of Appeals also affirmed the trial court's allowance of the defendant's Motion for Judgment Notwithstanding the Verdict on the MCRA count. See *Biggins v. Hazen Paper Co.*, 953 F.2d 1405 (1st Cir.1992).

Following the appeal, the plaintiff filed an application in the Court of Appeals for an award of $122,050 in attorneys' fees and $4,307.36 in costs for work done in defending the appeal. In response to this application, the Court of Appeals entered an order indicating that fees would only be permitted with regard to time spent defending the appeal on the ERISA and ADEA claims. In compliance with this order, plaintiff thereafter submitted a revised fee schedule confining the fee petition to the ERISA and ADEA causes of action. On March 19, 1992 the Court of Appeals entered a further order allowing the plaintiff $71,798.50 in attorneys' fees, but no costs.

On June 22, 1992, the Supreme Court granted the defendants' petition for writ of certiorari. Shortly thereafter, the defendants discharged the plaintiff's entire judgment to the extent that it had been affirmed by the First Circuit and was not subject to Supreme Court review. This payment, however, did not cover, or purport to cover, any of the plaintiff's claims for attorneys' fees.

On April 20, 1993, the U.S. Supreme Court entered a decision vacating the First Circuit's affirmance of the plaintiff's ADEA judgment, holding, contrary to the decisions of both the district court and the First Circuit, that pension interference neither constituted nor was probative of age discrimination. The Court remanded the matter to the First Circuit to consider whether there was sufficient evidence, independent of the pension interference, to permit a finding of an ADEA violation. See *Hazen Paper Co. v.*

---

1. The plaintiff's Supplemental Application (Docket No. 150) was denied by this court, without prejudice "to clarify the docket" on September 15, 1995. This ruling permitted the court to remove this long-pending motion from its statistical reporting. This Supplemental Application is now ripe for a substantive ruling, however, and the prior ruling is hereby vacated.

*Biggins,* 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993).

On October 18, 1993, a panel of the First Circuit Court of Appeals issued an opinion, upholding ADEA liability on grounds independent of any evidence regarding the ERISA violation.

Following this, on November 15, 1993, plaintiff filed with the Court of Appeals a supplemental application for an additional award of $276,444.25 in attorneys' fees plus $22,590.72 in costs, (representing fees and costs incurred after the first award of appellate fees but before defendants filed the petition for writ of certiorari), total fees and costs incurred during the Supreme Court proceedings and all fees and costs incurred following the Supreme Court's remand of the case to the First Circuit Court of Appeals.

On March 1, 1994, while this application was pending, the First Circuit, sitting *en banc,* issued an order directing the parties to show cause why the ADEA count should not be remanded for new trial, to avoid any possibility that the original jury might have improperly relied on pension interference as evidence of age discrimination, despite the fact that sufficient independent evidence of age discrimination existed to support the ADEA verdict.

In response to this directive, the plaintiff filed a memorandum on March 14, 1994, arguing that the pension-based evidence of age discrimination constituted only a tiny fragment of the evidence presented to the jury demonstrating age discrimination (a "blip on the screen") and could not have confused or tainted the jury.

Defendants make much of this "blip on the screen" comment, arguing that it suggests a concession by plaintiff that the ERISA claim overall was minuscule. This is not a fair construction of plaintiff's counsel's remarks. The only fair interpretation to be given this comment is that it reflected plaintiff's view that the ERISA evidence constituted a tiny portion of the *age* discrimination case. The independent ERISA action itself was obviously substantial, as the jury's verdict demonstrated.

In any event, the First Circuit, *en banc,* was not reassured by plaintiff's arguments. Out of concern that the jury may have considered improper pension-related evidence in connection with the age discrimination claim, the case was remanded to this trial court for a retrial on the age discrimination claim, on June 27, 1994. The court's order noted the original award of $71,798.50 for fees in connection with the first appeal and denied an additional requested amount in connection with the first appeal of $16,293.50. In addition, the Court of Appeals noted that the request for additional fees (*i.e.,* the $276,444.25) was rendered moot by the *en banc* decision.

It is noteworthy that the First Circuit was not requested by defendants to disturb the original fee award of $71,798.50, nor did it do so *sua sponte,* despite the fact that the judgment in favor of the plaintiff on the ADEA claim had been vacated as a result of the defendants' successful appeal to the Supreme Court.

Following remand pursuant to the *en banc* decision, the ADEA count was tried before this court and resulted in a verdict for the defendants.

## III. *DISCUSSION*

Plaintiff now seeks three categories of fees and costs. First, he seeks $175,564.57 in attorneys' fees and $9,760.07 in costs awarded by then Chief Judge Freedman on April 5, 1991, following the original trial at which plaintiff prevailed on both the ERISA and ADEA claims. Second, the plaintiff seeks $31,785.00 in fees and $1,716.96 in costs for time spent performing post-trial and pre-appellate work at the end of 1990 and beginning of 1991, but subsequent to the filing of the first application for attorneys' fees. As noted above, this application has never been substantively ruled on. Third, the plaintiff seeks execution on the award of fees in the amount of $71,798.50 made by the Court of Appeals following the first appeal and noted a second time by the Court of Appeals in its *en banc* Order of June 27, 1994.

The parties' arguments, in support of and in opposition to the plaintiff's motion, each

contain essentially two parts and are mirror images of each other.

Plaintiff argues first that (with the exception of the pending supplemental application) the fee awards represent final judgments that may not be disturbed. Moreover, if it *were* possible to disturb them, defendants have not followed a proper procedure to protect their rights. Alternatively, if the court possesses the power to alter these judgments, and defendants have properly invoked this power, then plaintiff argues that the subtraction of the ADEA count from the original trial would not have significantly affected the amount of time needed for preparation and trial of the successful ERISA claim and that therefore the fee award should not be reduced in any event.

Defendants vigorously contest the argument that *any* valid judgment for attorneys' fees has ever entered. If a judgment *has* entered for fees, defendants contend that they have properly moved to amend this judgment pursuant to Fed.R.Civ.P. 60(b)(5) or that the court may amend the judgment *sua sponte.* Moreover, defendants take the position that so long as the possibility of a plaintiff's verdict on the ADEA claim on remand existed, it would have been inappropriate and wasteful for them to attack the prior fee award either before the trial court or before the Court of Appeals.

■ On this point, the court agrees that the defendants have the stronger argument. Where a fee award is based in part upon success at the trial level on a count which permits fee shifting, and where that victory is reversed at the appellate level, with a resulting remand and victory for the defendants at the second trial on that same fee-shifting count, simple fairness demands that the trial court reconsider the original fee award. *See, e.g., Mother Goose Nursery Schools v. Sendak,* 770 F.2d 668, 676 (7th Cir.1985). *See also, Association for Retarded Citizens v. Thorne,* 68 F.3d 547 (2nd Cir.1995). The court will therefore deny plaintiff's motion for an immediate execution on the original judgment for attorney's fees.

Moving to the second step of their argument, defendants contend that, if the ADEA claim had been subtracted from the original case, the fee award would have been greatly reduced. Even assuming that the ERISA case standing alone would have required a substantial expenditure of time, defendants argue that plaintiff's limited success on the merits requires a substantial diminution in the fee award. In order to insure a fair calculation of an appropriate fee for his efforts at the first trial, defendants contend that plaintiff should now submit a revised fee application covering only the time that would have been necessary to prosecute the ERISA claim at the original trial back in 1990.

Out of consideration for the forests of Western Massachusetts and the number of trees that have already fallen to provide the paper for this litigation, the court will not require the submission of a revised fee petition. I have lived with this case since 1988 as a magistrate judge and district court judge. I am intimately familiar with the issues raised by the case and have had an opportunity carefully to review plaintiff's original Motion for Award of Attorneys' Fees and Costs, filed with this court on September 26, 1990 (Docket No. 113), and its attached detailed submissions covering legal work beginning on December 28, 1987 with a phone conference with the client and ending on September 26, 1990 with the preparation and filing of the original fee petition. I presided at the trial on remand. This court is therefore in a position on its own to make an appropriate adjustment of the original fee award to take into consideration defendants' successful appeal and favorable verdict at the second trial on the ADEA claim.

The question therefore is: to what degree would the elimination of the ADEA claim from the original 1990 trial have resulted in a reduction in the amount of fees needed to prepare for and try that case? The answer is, in the somewhat unique circumstances of this case, that the elimination of the ADEA count would not have substantially reduced the amount of time necessary for either preparation or trial of the remaining ERISA case.

Plaintiff's essential claim always was that he was terminated as an expression of age bias and to deprive him of certain pension rights. The defendants' response to this

claim always has been that the plaintiff was discharged for a bona fide reason: he was doing business with competitors and refused to sign a confidentiality agreement to protect his employer's interests while serving two masters. In order to undermine the defendants' proffered justification for their decision to terminate the plaintiff, the plaintiff was required, under either the ADEA or the ERISA theory, to offer evidence of an objective, justifiable reason for his reluctance to sign the confidentiality agreement. The vast majority of the evidence, explored during discovery or presented at trial, would have been needed whether the ERISA or ADEA counts were tried together, or whether the ERISA count was tried alone. Virtually all of the same witnesses would have had to have been prepared and presented at trial. The issue was always the same: why was plaintiff terminated?

Defendants argue that Judge Freedman's initial award of 100% of the fee claim was itself improper because it did not adequately take into consideration certain claims (such as claims for ownership in certain coatings used by the defendants) on which the plaintiff did not prevail even at the first trial. It is not this court's task, however, to second-guess the decisions made by Judge Freedman with regard to attorneys' fees as to issues which were ripe before him almost six years ago. The purpose of this memorandum is solely to review the appropriateness and amount of the fee award, given the recent success by the defendant on the ADEA claims.[2]

█ Recognizing that elimination of the ADEA claim would have simplified the earlier trial to *some* extent, this court will make a reduction of 20% in the fees to reflect the reduction in time necessary for pretrial preparation and trial had no ADEA claim been pursued. The same reduction will be made with regard to the pending fee application in the amount of $31,785 in fees.

Defendant's argument that the fee award should be reduced, due to minimal success on the merits overall will not wash. Success is

not measured by totting up the number of counts a plaintiff prevails on. Including interest, plaintiff has been paid over $600,000 already on the original ERISA judgment. His success at the first trial, even viewed in light of all subsequent appellate proceedings, was substantial.

█ The decision to reduce the trial court fees by 20% leaves only the issue of the Court of Appeals' award of $71,798.50 remaining for decision. The court will make no reduction with regard to those fees. The Court of Appeals initially awarded them on the first fee appeal but, significantly, reviewed the award in 1994 after it was clear that the ADEA judgment would be reversed and that that count would be remanded for new trial. The Court of Appeals must have considered the possible effect of plaintiff's unsuccessful defense of the ADEA award in determining to let the original appellate fee award stand. The calculus of fees at the appellate level is different from the trial level. It is not this court's task to alter the decisions of the Court of Appeals, especially when that court has considered the issue twice.

For the foregoing reasons, the court, exercising its authority pursuant to Rule 60(b)(5), will award plaintiff fees in connection with this case in the following amounts:

1. *Original Fee Award*
   $140,451.65 (80% of $175,564.57)
   $9,760.07 Costs
2. *Supplemental Application*
   $25,428.00 (80% of $31,785.00)
   $1,716.96 Costs
3. *Court of Appeals Fee Award*
   $71,798.50
4. *Totals:*
   Fees: $237,678.15
   Costs: $11,477.03
5. *Grand Total:* $249,155.18

For the reasons set forth in this memorandum, the plaintiff's Motion for Execution is hereby DENIED; defendant Motion for Re-

---

**2.** In any event, Judge Freedman's decision in 1991 that the adverse verdicts on some minor claims, pled in the alternative, had no significant impact on the fee analysis, is well supported both by the record and by common sense.

lief from Judgment is hereby ALLOWED, in part.