Girdell **BARNEY,** Kathleen Heller, Lewis Hutchinson, Ruth Wlodek, Richard Lee, and David A. Ethridge, Plaintiffs,

v.

James K. **HAVEMAN,** Director of the Michigan Department of Mental Health, Martha Bibbs, Personnel Director of the State of Michigan, Peter Ellsworth, Chair of the Michigan Civil Service Commission, Laurence Deitch, Member of the Michigan Civil Service Commission, John Pirich, Member of the Michigan Civil Service Commission, and Robert Young, Member of the Michigan Civil Service Commission, Defendants.

No. 1:92–CV–134.

United States District Court, W.D. Michigan, Southern Division.

March 3, 1995.

Larry A. Betz, White, Beekman, Przybylowicz, Schneider & Baird, Okemos, MI, for plaintiffs.

Frank J. Kelley, Atty. Gen., Gary P. Gordon, Asst. Atty. Gen., Denise Carole Barton, Asst. Atty. Gen., Public Employment & Elections Div., Lansing, MI, for defendants.

### MEMORANDUM OPINION

McKEAGUE, District Judge.

This case presents claims of age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq.[1] Now before the Court are the par-

---

**1.** Plaintiffs' complaint also stated a claim under the Michigan Elliott–Larsen Civil Rights Act, M.C.L. § 37.2101 et seq. In an order filed on January 30, 1995, this claim was dismissed without prejudice because it is barred by the Eleventh Amendment.

ties' cross-motions for summary judgment.[2] The Court has reviewed the briefs and supporting documents and considered the arguments offered at the hearing on January 30, 1995, and now finds this matter ready for decision.

## I. FACTS

Plaintiffs are all former employees[3] of the Oakdale Regional Center for Developmental Disabilities (Oakdale), a mental health services facility formerly operated by the Michigan Department of Mental Health (DMH). Oakdale was closed, along with nine other DMH facilities, pursuant to a policy referred to as "deinstitutionalization" whereby DMH "shift[ed]" from the state to a county the primary responsibility for the direct delivery of public mental health services whenever the county shall have demonstrated a willingness and capacity to provide an adequate and appropriate system of mental health services for the citizens of the county." M.C.L. § 330.1116(e). Plaintiffs do not challenge the propriety of the closing of the Oakdale facility, which occurred on September 30, 1991.

Plaintiffs' claims stem from the severance pay policy in effect at the time they were laid off. "Plaintiffs allege the severance policy maintained by Defendant Civil Service Commission and implemented by Defendant Department of Mental Health discriminated against them on the basis of age." Plaintiffs' brief in opposition, p. 1. Defendants argue that plaintiffs' claims are barred by the statute of limitations, or, alternatively, that plaintiffs have failed to state a claim under the law controlling at the time their claims accrued.

At the time the Oakdale facility was closed, plaintiffs' entitlement to severance pay required satisfaction of several factors, the relevant one here being that plaintiffs could not be eligible for retirement pay at the time they were laid off.[4] Plaintiffs' brief in support, Exh. 6 (Department of Civil Service Compensation Plan). Plaintiffs claim this reliance on eligibility for retirement pay violates the ADEA because age is one of the factors determining such eligibility.

At the time plaintiffs were laid off, the following combinations of age and length of employment made employees eligible for retirement pay: age 60 and 10 or more years of credited service; age 55 to 59 and 15 or more years of credited service; age 51 or older and 25 or more years of credited service, the last 5 of which are at a facility designated for closure; age 56 or older and 10 or more years of credited service, the last 5 of which are at a facility designated for closure; 25 or more years of credited service, regardless of age, at a facility designated for closure; or, age 50 or older and the employee's combined age and amount of credited service is equal to or greater than 70 years. M.C.L. § 38.19(1), (2), (5); M.C.L. § 38.19b. Based on these factors, plaintiffs claim that "[a]ge was a significant factor in the denial of severance pay to Plaintiffs," (Second Amended Complaint, ¶ 57), and that such reliance on age violates the ADEA. It is undisputed that DMH is an employer under the ADEA, 29 U.S.C. § 630(b), that the Michigan Civil Service Commission (CSC) exercised the ultimate authority for implementation of the severance pay policy being challenged here, and that plaintiffs have exhausted their administrative remedies.

## II. SUMMARY JUDGMENT STANDARD

■ Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a

2. Plaintiffs' motion is actually titled "Motion for Partial Summary Disposition [sic]." Plaintiffs allege defendants' liability under two theories, disparate treatment and disparate impact, but "seek summary disposition [sic] only as to their disparate treatment claims, in that discovery as to the disparate impact claim is incomplete." Plaintiffs' brief in support, p. 1.

3. Plaintiffs were all non-exclusively represented employees (NEREs). All conditions of employ-

ment in the classified civil service (which includes NEREs) are regulated by the Michigan Civil Service Commission, pursuant to the Michigan Constitution, Art. 11, § 5.

4. All plaintiffs were eligible for retirement pay when the Oakdale facility was closed, and all of them chose to take retirement rather than exercise their available option to remain on recall status for up to three years.

matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. at 2512. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.,* 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original).

The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, the moving party is not required to expressly negate the opponent's claim. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. The movant satisfies its initial burden merely "by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Street v. J.C. Bradford Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

Once the movant makes a sufficient showing of an absence of evidence to support the non-moving party's case, the non-moving party then assumes the burden of coming forward with evidence demonstrating a genuine issue of material fact. *Celotex,* 477 U.S. at 324–25, 106 S.Ct. at 2553–54. The non-moving party may not rest on the mere allegations contained in the pleadings, but, rather, must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient." *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512. The non-moving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1389 (6th Cir.1993).

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. And an issue of material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356.

## III. APPLICABLE LAW

Plaintiffs' claims are based on the following provisions of the ADEA:

It shall be unlawful for an employer—

(1) [to] discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age; [or]

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age;

29 U.S.C. § 623(a)(1), (2). Prior to its amendment in 1990, the ADEA also provided, in relevant part:

It shall not be unlawful for an employer—

\*  \*  \*  \*  \*  \*

(2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual, and no such

seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual specified by section 631(a) of this title because of the age of such individual.

29 U.S.C. § 623(f)(2).

In *Public Employees Retirement System of Ohio v. Betts,* 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989), the United States Supreme Court held that the ADEA "forbids arbitrary discrimination by public and private employers against employees on account of age," but that "[u]nder § 4(f)(2) of the Act, 29 U.S.C. § 623(f)(2), however, age-based employment decisions taken pursuant to the terms of 'any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of' the Act, are exempt from the prohibitions of the ADEA." *Id.* at 161, 109 S.Ct. at 2858. The Supreme Court construed "the presence of the various exemptions and affirmative defenses contained in § 4(f)" as proof that "Congress recognized that not all age discrimination in employment is 'arbitrary.'" *Id.* at 176, 109 S.Ct. at 2866. The Supreme Court concluded that "§ 4(f)(2) ... exempt[s] the provisions of a bona fide benefit plan from the purview of the ADEA" because, in enacting the ADEA, Congress "legislated only as to hiring and firing, wages and salaries, and other non-fringe benefit terms and conditions of employment." *Id.* at 177, 109 S.Ct. at 2867. "In short, the legislative history confirms that ... Congress intended to exempt employee benefit plans from the coverage of the Act except to the extent plans were used as a subterfuge for age discrimination in other aspects of the employment relation." *Id.* at 180, 109 S.Ct. at 2868.

In 1990, Congress passed the Older Workers Benefit Protection Act (OWBPA),[5] which, in relevant part, amended subsection (f) of the ADEA as follows:

It shall not be unlawful for an employer—

&ast; &ast; &ast; &ast; &ast; &ast;

(2) to take any action otherwise prohibited under subsection (a), (b), (c), or (e) of this section—

&ast; &ast; &ast; &ast; &ast; &ast;

(B) to observe the terms of a bona fide employee benefit plan—

(i) where, for each benefit or benefit package, the actual amount of payment made or cost incurred on behalf of an older worker is no less than that made or incurred on behalf of a younger worker ...; or

(ii) that is a voluntary early retirement incentive plan consistent with the relevant purpose or purposes of this chapter.

29 U.S.C. § 623(f)(2)(B)(i), (ii).

The legislative history of the OWBPA makes clear that Congress intended to "overturn[] both the reasoning and holding of the Supreme Court in ... *Betts*."[6] Passage of the OWBPA was a "Congressional reaffirmation of the original 'equal benefit or equal cost' principle," specifically intended "to correct the Court's erroneous holding in *Betts*."[7]

The OWBPA also set forth the effective dates of the amendments, which differed depending on the public or private status of the employer. The provisions relevant to this case stated:

"(a) **In general.**—Except as otherwise provided in this section, this title and the amendments made by this title shall apply only to—

(2) other conduct occurring more than 180 days after the date of enactment of this Act.

&ast; &ast; &ast; &ast; &ast; &ast;

(c) **States and political subdivisions.**—

(1) **In general.**—With respect to any employee benefits provided by an employer—

(A) that is a State or political subdivision of a State or any agency or instrumentality of a State or political subdivision of a State; and

---

**5.** Pub.L. 101–433.

**6.** Senate Report 101–263, p. 5 (reprinted in 1990 U.S.Code Congressional and Administrative News, p. 1510) [hereinafter S.R. at —— (U.S.C.C.A.N. at ——)].

**7.** S.R. at 17 (U.S.C.C.A.N. at 1522).

(B) that maintained an employee benefit plan at any time between June 23, 1989, and the date of enactment of this Act [Oct. 16, 1990] that would be superseded (in whole or part) by this title and the amendments made by this title but for the operation of this subsection, and which plan may be modified only through a change in applicable State or local law,

this title and the amendments made by this title shall not apply until the date that is 2 years after the date of enactment of this Act [Oct. 16, 1990].

Pub.L. 101–433, § 105(a)(2), (c)(1)(A), (B).

## IV. ANALYSIS

It is clear to the Court, and during oral argument became clear to the parties, that the challenged severance pay policy was in compliance with the ADEA as interpreted by the Supreme Court in *Betts*, and was violative of the ADEA as amended by the OWBPA.[8] Therefore, the dispositive legal question is when the OWBPA became effective as to the challenged policy: specifically, could the challenged policy "be modified only through a change in applicable State or local law"? Before deciding that question, however, the Court briefly addresses two other arguments made by the parties.

■ Defendants claim that a post-OWBPA decision of the Supreme Court, *Hazen Paper Co. v. Biggins*, —— U.S. ——, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), sets forth the principle that employers' actions based on a factor that is empirically correlated with age do not violate the ADEA. Defendants then rely on this alleged principle to argue, based on *Lorance v. AT & T Technologies, Inc.*, 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989), that the limitations period for plaintiffs' claims began to run when the challenged severance pay policy was adopted in 1982. Therefore, defendants argue, the two-year statute of limitations [9] set forth in the ADEA,

29 U.S.C. §§ 626(e)(1), 255(a), expired in 1984 and plaintiffs' claims are barred. Defendants, however, simply misread the *Hazen Paper* opinion.

In *Hazen Paper* the Supreme Court did address "the question whether an employer violates the ADEA by acting on the basis of a factor, such as an employee's pension status or seniority, that is empirically correlated with age," but, contrary to defendants' claim, concluded only "that there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age." *Id.* at ——, 113 S.Ct. at 1705. The Supreme Court explained that the discrimination prescribed by the ADEA is not relevant "[w]hen the employer's decision is wholly motivated by factors other than age, ... even if the motivating factor is correlated with age, as pension status typically is." *Id.* "Because age and years of service are analytically distinct, an employer *can* take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age-based.'" *Id.* at ——, 113 S.Ct. at 1707 (emphasis added). The opinion clearly does not support the principle posited by defendants. Further, the *Hazen Paper* case is factually distinguishable from the instant case because the employer's plan challenged here explicitly relied on age *and* years of service, not solely years of service as in *Hazen Paper*. Therefore, defendants' implicit argument that the severance pay policy as it existed in September 1991 does not violate the ADEA as amended by the OWBPA is clearly erroneous.[10]

More importantly, defendants' misunderstanding of *Hazen Paper* undermines their attempt to apply the Supreme Court's ruling in *Lorance*. Defendants are correct in noting *Lorance*'s holding that the limitations period for causes of action challenging employment plans that are nondiscriminatory in form and application is triggered when the plan is adopted, see 490 U.S. at 911, 109 S.Ct.

---

**8.** The CSC's severance pay policy has since been amended.

**9.** The limitations period for a cause of action arising out of a willful violation is three years. 29 U.S.C. § 255(a).

**10.** This is so not only because of the misreading of *Hazen Paper*, but also because there is no evidence, or even allegation, of a cost-justification in the severance pay policy challenged here.

at 2268–69, but fail to note the Court's further statement "that a facially discriminatory [plan] ... can be challenged at any time." *Id.* at 912, 109 S.Ct. at 2269. As already discussed, the plan challenged here expressly relies on age as a determining factor. Therefore, defendants' reliance on *Lorance* is misguided and plaintiffs' claims are not barred by the statute of limitations.

Plaintiffs argue that the challenged policy was violative of the ADEA as it existed prior to the OWBPA, based on caselaw from the Third Circuit. In light of plaintiffs' acknowledgement that this caselaw was "invalidated" by *Betts* and that, "[o]n remand, the Third Circuit reversed its previous decision,"[11] the Court considers plaintiffs' argument on this issue disingenuous at best. Accordingly, the Court now turns to the dispositive legal question before it.

■ Plaintiffs argue that a "change in the severance policy did not require a change in law," and therefore the effective date of the OWBPA was 180 days after its enactment (i.e., April 14, 1991). Plaintiffs point out that the CSC has plenary power over conditions of employment and that the compensation plan setting forth the challenged policy is established by a resolution which becomes effective if not vetoed by two-thirds of the State Legislature, and then conclude that this process "is anything but legislative." Plaintiffs offer no authority supporting their theory that the phrase "State or local law" refers solely to legislative enactments.

The plain language of the OWBPA does not support plaintiffs' theory. Congress did not restrict the scope of the phrase "State law" solely to State statutes and this Court cannot read such a limitation into the Act. The common usage of the word "law" does not constrain it as plaintiffs would have this Court do. See, e.g., *U.S. Fidelity & Guaranty Co. v. Guenther*, 281 U.S. 34, 37, 50 S.Ct. 165, 167, 74 L.Ed. 683 (1930) (in its generic sense, "law" means "the rules of action or conduct" duly prescribed by controlling authority, and having binding legal force). And neither does the Michigan State Constitution limit the definition of "law"

strictly to legislative enactments. See, e.g., Mich. Const., Art. VII, § 2 (county charter provides general law for the county).

■ Furthermore, it is undisputed that "administrative rules adopted pursuant to statutory authority have the force and effect of law," *People v. Willis*, 180 Mich.App. 31, 35, 446 N.W.2d 562 (1989); *Mehrer v. Michigan Dept. of Social Services*, 24 Mich.App. 453, 459, 180 N.W.2d 345 (1970), that the CSC promulgates administrative rules governing conditions of employment pursuant to constitutional authority, Mich. Const., Art. XI, § 5, and that the challenged policy and its subsequent amendment were promulgated pursuant to CSC Rule 5–1.1. This, too, leads the Court to conclude that a change in the challenged policy required a change in applicable State law.

Finally, the Court notes that the legislative history of the OWBPA does not support plaintiffs' theory. An explanatory statement regarding § 105 of the OWBPA was placed in the Congressional Record by Senator Pryor, one of the sponsors of the bill. It said:

> Two changes have been made [in § 105] to address the unique problems faced by state and other public employers. First, public employers will be given a delay in ... the effective date until 2 years following the date of enactment of this legislation. Most plans can only be changed through a change in the law, and timing is dictated by the schedules of legislatures, city counsels [sic] or other governing bodies. Public employers, therefore, require much more time to amend their benefit plans that [sic] do private employers.

Cong.Rec., S 13250 (September 17, 1990). Plaintiffs claim these "unique problems" are not faced by the CSC because its resolution does not originate in the Legislature and is not subject to the same number of readings as a legislatively enacted bill. Once again, plaintiffs would have this Court read into the OWBPA distinctions among public employers that are not supported by the plain language of the statute or its legislative history.

The legislative rules of the Michigan Senate and House of Representatives do not provide for any difference in treatment of

---

**11.** Plaintiffs' brief in support, p. 10 and n. 2.

resolutions based on their source of origination. Michigan State Senate Rule 3.204; Michigan House of Representatives Rule 72. Further, the Court sees no basis for plaintiffs' conclusion that requiring only one reading by the Legislature, rather than three as for legislatively enacted bills, Senate Rule 3.207; House Rule 42, mitigates the unique problems of timing and other concerns faced by legislatures. Even conceding that the lesser number of readings diminishes the problems somewhat, it is clear to the Court that it does not do so to such an extent as would support plaintiffs' claim that the CSC can modify its employee benefit plans as easily as private employers. In light of Congress's significant and unambiguous distinction between public and private employers, the Court finds plaintiffs' arguments to be unavailing.

For all the foregoing reasons, the Court hold that defendants' severance pay policy could be modified only through a change in applicable State law, and therefore, as to the policy challenged here, the OWBPA did not become effective until October 16, 1992. Therefore, plaintiffs' complaint fails to state a claim under the ADEA and defendants are entitled to judgment as a matter of law.[12]

An order consistent with this opinion shall issue forthwith.

---

**12.** Because the OWBPA had not yet taken effect when plaintiffs were denied severance pay, this decision covers plaintiffs' claims under both theories: disparate treatment and disparate impact.