h SAUNDERS, J.,
dissenting.
I dissent from the majority’s ruling that Mr. Taylor’s age was not a determining factor in his discharge. The majority found that the profitability rational provided by Oakbourne was not a pretext for improper age discrimination. They state that financial and business consideration are necessarily a part of the personnel decisions and are not always improper. This is most, certainly true. In fact, personnel decisions actually based on financial and business considerations would always be proper in cases of at-will employment. I believe in the instant matter, however, that the evidence shows that the decision to dismiss Mr. Taylor from his management position at the Oakbourne Country Club could not have been based solely on financial and business considerations. I find Mr. Taylor successfully illustrated that the reasons articulated by Oakbourne Country Club from his dismissal were clearly pretextual.
As stated by the majority, Mr. Taylor clearly establishes a prima facie case of age discrimination. Once the plaintiffs prima facie case is successfully established, it falls to the defendant to proffer a legitimate, nondiscriminatory reason for the employment action in question, which can *968 overcome the presumption of impermissible discrimination raised. Oakbourne offers two justifications for its actions concerning Mr. Taylor and his position at the club. First, Oakbourne claims |3that Mr. Taylor’s work performance was poor. As shown in the discussion of Mr. Taylor’s prima facie case in the majority opinion, there is ample evidence of Mr. Taylor’s superior performance of his assistant manager duties, as well as his general popularity and the level of respect he received from club members and management alike, to discount that justification. The trial court found it clear that the job performance problems cited by Mr. Byrne were either non-existent or not caused by Mr. Taylor’s job performance. The trial judge specifically noted in his reasons for judgment that the decision to take action against Mr. Taylor was made prior to Mr. Byrne’s arrival, and therefore, insufficien-cies in job performance purportedly discovered by Mr. Byrne after his arrival “could not have been the motivation for firing Mr. Taylor, but were instead merely a pretext.”
Oakbourne’s second justification for its employment decisions regarding Mr. Taylor is that his demotion was the result of a decision to flatten the management structure and save the club money, rather than an act of impermissible discrimination. Mr. Taylor maintains that this proffered motivation is also pretextual. After Mr. Taylor’s resignation he asserts that Mr. Byrne actually added a new management level and increased Oakbourne’s overall salary costs for management personnel. There was testimony presented at trial that a position of maintenance supervisor was added to the management staff with a starting salary of $25,000.00. In addition to this new position, Mr. Taylor alleges that he was directly replaced by Kim Tyler, a twenty-eight year old former associate of Mr. Byrne. Tyler was hired as director of food and beverage service at a salary of $24,000.00. Oakbourne claims that Tyler was not hired to replace Mr. Taylor, because the assistant general manager position had been eliminated. However, several employees who worked at Oakbourne in 1991 testified |3that Tyler replaced Mr. Taylor and performed essentially the same jobs and duties that Mr. Taylor had performed as assistant manager.
While the evidence clearly shows that Oakbourne had suffered a loss in income, the actions of Mr. Byrne do not support Oakbourne’s contention that Mr. Taylor’s demotion and pay cut were merely part of a plan intended to cut personnel costs and flatten the management structure. It seems clear that Mr. Byrne’s hiring of additional staff to fulfill the duties and obligations originally handled by Mr. Taylor actually resulted in an increase in personnel costs. This evidence conclusively supports Mr. Taylor’s contention that this justification is also a mere pretext, and should not be entertained.
Mr. Taylor also asserts that the trial judge was legally incorrect in his application of La.R.S. 23:971 et seq., and interpreting jurisprudence. The United States Supreme Court, in Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147, 120 S.Ct. 2097, 2108 (2000), stated:
[W]e reason[ ] that it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer’s explanation. Specifically, we stated:
“The factfinder’s disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the pri-ma facie case, suffice to show intentional discrimination. Thus, rejection *969 of the defendant’s proffered reasons ■will permit the trier of fact to infer the ultimate fact of intentional discrimination.”
quoting St. Mary’s Honor Center v. Hicks, 509 U.S. 502, 511, 113 S.Ct. 2742, 2749 (1993).
The trial judge notes in his written reasons that, under Metz v. Transit Mix, Inc., 828 F.2d 1202 (7th Cir.1987), Mr. Taylor “would have successfully proved his |4claim.” He then states that Hazen Paper Co. v. Biggins, 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), overruled Metz and, under Hazen Paper, the evidence presented by Taylor was “insufficient to prove illegal age discrimination.” Mr. Taylor urges that the trial court misinterpreted the impact of the Hazen Paper decision on the precedent established in Metz. I agree with Mr. Taylor on this matter and believe the trial court erred in finding that Mr. Taylor failed to prove illegal age discrimination on the part of Oakbourne.
Mr. Taylor correctly notes that the factual circumstances and specific issues addressed by the courts were distinguishable, and therefore, Hazen Paper does not specifically overrule the court’s holding in Metz. In Metz, the trial court found that Transit Mix’s decision to replace Metz with Burzloff was a desire to save the higher cost of Metz’s salary, and that in Metz’s case, salary bore a direct relationship to age. The appellate court stated that the sole issue on appeal was, “whether the salary savings that can be realized by replacing a single employee in the ADEA age-protected range with a younger, lower salaried employee constitutes a permissible, nondiscriminatory justification for the replacement.” Metz, 828 F.2d at 1205. The court went on to state, “the ADEA has consistently been interpreted by the administrative agencies charged with its enforcement and the courts to prohibit an employer from replacing higher paid employees with lower paid employees in order to save money.” Id. The intent of the ADEA is to protect older employees who, after years of service, have often built higher salary levels than their younger counterparts. Id.
The district court found that there is a distinction between whether an employer’s employment action, motivated by a desire to save money, affects a group |Kof employees or an individual employee. In Metz,. the appellate court overruled the district court’s determination, that while the decision of an employer affecting a group of employees would be impermissible, that same justification would be a legitimate, nondiscriminatory reason for replacing a single employee. The appellate court found this to be an inappropriate distinction as applied to Metz’s claim, and emphasized that the ADEA is aimed at protecting the individual employee. This is also true of the applicable LADEA statute, La. R.S. 23:972, which was in effect at the time Mr. Taylor resigned from Oakbourne.[1] La.R.S. 23:972 provided in pertinent part:
It is unlawful for an employer to:
(1) fail or refuse to hire, or to discharge, any individual or otherwise discriminate against any individual with respect to his compensation, terms, condition, or privileges of employment because of the individual’s age.
(emphasis added).
The appellate court in Metz recognized, however, that their use of pay as a “proxy” for age, while inescapable in Metz, is of limited value and should be evaluated on a case-by-case basis, used only where the *970 facts of the case warrant its use. In Metz’s case, the facts suggested that seniority is a factor in compensation, and age and seniority are strongly correlated. The court specifically discussed differences in salary evaluation for age discrimination purposes, and fringe benefit evaluation. It noted that salaries are substantially within the control of the employer, while fringe benefits, such as employee pension plans, may not be. This fact, they noted, would result in a different analysis.
In Hazen Paper the United States Supreme Court granted writs to address the IfiSpecifíc question of whether an employer’s interference with the vesting of pension benefits violates the ADEA. The appellate court in that case had affirmed a judgment of liability and relied heavily on evidence that the petitioner had fired the respondent in order to prevent his pension benefits from vesting. The Supreme Court held there is no disparate treatment under the ADEA when the factor motivating the employer is some factor other than the employee’s age. The Court noted that, under the ADEA, employers cannot rely on age as a proxy for an employee’s other characteristics, such as productivity, they must focus on those factors directly.
I find the Supreme Court’s opinion in Hazen Paper does not directly overrule the Seventh Circuit’s holding that it was impermissible for the employer in Metz to use Metz’s age as a proxy for salary, and, in fact, is in accord with their ruling. The Supreme Court also stated that, “[i]n the ordinary ADEA case, indirect evidence of this kind may well suffice to support liability if the plaintiff also shows that the employer’s explanation for its decision ... is ‘unworthy of credence’.” Hazen Paper, 507 U.S. at 618, 113 S.Ct. at 1707.(Pg.613, 1707). The Court clarified its holding with respect to decisions made based on benefits such as pension, which can be, but are not always, associated with age. “Our holding is simply that an employer does not violate the ADEA just by interfering with an older employee’s pension benefits that would have vested by virtue of the employee’s years of service.”
Hazen Paper, 507 U.S. at 613, 113 S.Ct. at 1707-08.
In the present case, I find the facts show that, as was the case in Metz, Mr. Taylor’s salary was used as a proxy for age by Oakbourne. In my reading of Hazen Paper I find that, in cases such as the case sub judice, it is permissible to find that Oakbourne’s explanation for its decision is unworthy of credence. Therefore, the trial |7court erred in holding that Mr. Taylor’s claim must fail under Hazen Paper. Since both reasons proffered by Oakbourne for its employment actions with respect to Mr. Taylor are not credible, therefore, I would reverse the judgment of the trial court. The evidence supports a conclusion in this case that Oakbourn’s actions were in violation of the LADEA.
For the reasons set forth above I respectfully dissent from the majority’s ruling.

. La.R.S. 23:971-975 have since been repealed and replaced with the Louisiana Employment Discrimination Law found in La. R.S. 23:301 et seq.