HAZEN PAPER CO. ET AL. *v.* BIGGINS

No. 91–1600.   Argued January 13, 1993—Decided April 20, 1993

O'CONNOR, J., delivered the opinion for a unanimous Court. KENNEDY, J., filed a concurring opinion, in which REHNQUIST, C. J., and THOMAS, J., joined, *post*, p. 617.

*Robert B. Gordon* argued the cause for petitioners. With him on the briefs were *John M. Harrington, Jr.*, and *John H. Mason.*

*Maurice M. Cahillane, Jr.*, argued the cause for respondent. With him on the briefs were *John J. Egan, Edward J. McDonough, Jr.*, and *Eileen Z. Sorrentino.*

*John R. Dunne* argued the cause for the United States et al. as *amici curiae* urging affirmance. With him on the brief were *Solicitor General Starr, Deputy Solicitor Gen-*

*eral Roberts, Edward C. DuMont, Donald R. Livingston,* and *Gwendolyn Young Reams.*\*

JUSTICE O'CONNOR delivered the opinion of the Court.

In this case we clarify the standards for liability and liquidated damages under the Age Discrimination in Employment Act of 1967 (ADEA), 81 Stat. 602, as amended, 29 U. S. C. § 621 *et seq.*

I

Petitioner Hazen Paper Company manufactures coated, laminated, and printed paper and paperboard. The company is owned and operated by two cousins, petitioners Robert Hazen and Thomas N. Hazen. The Hazens hired respondent Walter F. Biggins as their technical director in 1977. They fired him in 1986, when he was 62 years old.

Respondent brought suit against petitioners in the United States District Court for the District of Massachusetts, alleging a violation of the ADEA. He claimed that age had been a determinative factor in petitioners' decision to fire him. Petitioners contested this claim, asserting instead that respondent had been fired for doing business with competitors of Hazen Paper. The case was tried before a jury, which rendered a verdict for respondent on his ADEA claim and also found violations of the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 895, § 510, 29 U. S. C. § 1140, and state law. On the ADEA count, the jury specifically found that petitioners "willfully" violated the statute. Under § 7(b) of the ADEA, 29 U. S. C. § 626(b), a "willful" violation gives rise to liquidated damages.

---

\**Robert E. Williams, Douglas S. McDowell,* and *Mona C. Zeiberg* filed a brief for the Equal Employment Advisory Council et al. as *amici curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the American Association of Retired Persons by *Steven S. Zaleznick* and *Cathy Ventrell-Monsees;* and for the National Employment Lawyers Association by *Paul H. Tobias.*

Petitioners moved for judgment notwithstanding the verdict. The District Court granted the motion with respect to a state-law claim and the finding of "willfulness" but otherwise denied it. An appeal ensued. 953 F. 2d 1405 (CA1 1992). The United States Court of Appeals for the First Circuit affirmed judgment for respondent on both the ADEA and ERISA counts, and reversed judgment notwithstanding the verdict for petitioners as to "willfulness."

In affirming the judgments of liability, the Court of Appeals relied heavily on the evidence that petitioners had fired respondent in order to prevent his pension benefits from vesting. That evidence, as construed most favorably to respondent by the court, showed that the Hazen Paper pension plan had a 10-year vesting period and that respondent would have reached the 10-year mark had he worked "a few more weeks" after being fired. *Id.*, at 1411. There was also testimony that petitioners had offered to retain respondent as a consultant to Hazen Paper, in which capacity he would not have been entitled to receive pension benefits. *Id.*, at 1412. The Court of Appeals found this evidence of pension interference to be sufficient for ERISA liability, *id.*, at 1416, and also gave it considerable emphasis in upholding ADEA liability. After summarizing all the testimony tending to show age discrimination, the court stated:

> "Based on the foregoing evidence, the jury could reasonably have found that Thomas Hazen decided to fire [respondent] before his pension rights vested and used the confidentiality agreement [that petitioners had asked respondent to sign] as a means to that end. The jury could also have reasonably found that age was inextricably intertwined with the decision to fire [respondent]. If it were not for [respondent's] age, sixty-two, his pension rights would not have been within a hairbreadth of vesting. [Respondent] was fifty-two years old when he was hired; his pension rights vested in ten years." *Id.*, at 1412.

As to the issue of "willfulness" under § 7(b) of the ADEA, the Court of Appeals adopted and applied the definition set out in *Trans World Airlines, Inc.* v. *Thurston*, 469 U. S. 111 (1985). In *Thurston*, we held that the airline's facially discriminatory job-transfer policy was not a "willful" ADEA violation because the airline neither "knew [nor] showed reckless disregard for the matter of whether" the policy contravened the statute. *Id.*, at 128 (internal quotation marks omitted). The Court of Appeals found sufficient evidence to satisfy the *Thurston* standard, and ordered that respondent be awarded liquidated damages equal to and in addition to the underlying damages of $419,454.38. 953 F. 2d, at 1415–1416.

We granted certiorari to decide two questions. 505 U. S. 1203 (1992). First, does an employer's interference with the vesting of pension benefits violate the ADEA? Second, does the *Thurston* standard for liquidated damages apply to the case where the predicate ADEA violation is not a formal, facially discriminatory policy, as in *Thurston*, but rather an informal decision by the employer that was motivated by the employee's age?

## II

### A

The Courts of Appeals repeatedly have faced the question whether an employer violates the ADEA by acting on the basis of a factor, such as an employee's pension status or seniority, that is empirically correlated with age. Compare *White* v. *Westinghouse Electric Co.*, 862 F. 2d 56, 62 (CA3 1988) (firing of older employee to prevent vesting of pension benefits violates ADEA); *Metz* v. *Transit Mix, Inc.*, 828 F. 2d 1202 (CA7 1987) (firing of older employee to save salary costs resulting from seniority violates ADEA), with *Williams* v. *General Motors Corp.*, 656 F. 2d 120, 130, n. 17 (CA5 1981) ("[S]eniority and age discrimination are unrelated. . . . We state without equivocation that the seniority a given

plaintiff has accumulated entitles him to no better or worse treatment in an age discrimination suit"), cert. denied, 455 U. S. 943 (1982); *EEOC* v. *Clay Printing Co.*, 955 F. 2d 936, 942 (CA4 1992) (emphasizing distinction between employee's age and years of service). We now clarify that there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age.

We long have distinguished between "disparate treatment" and "disparate impact" theories of employment discrimination.

> "'Disparate treatment' . . . is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion [or other protected characteristics.] Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. . . .
>
> "[C]laims that stress 'disparate impact' [by contrast] involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. Proof of discriminatory motive . . . is not required under a disparate-impact theory." *Teamsters* v. *United States*, 431 U. S. 324, 335–336, n. 15 (1977) (citation omitted) (construing Title VII of Civil Rights Act of 1964).

The disparate treatment theory is of course available under the ADEA, as the language of that statute makes clear. "It shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of such individual's age.*" 29 U. S. C. § 623(a)(1) (emphasis added). See *Thurston, supra,* at 120–125 (affirming ADEA

liability under disparate treatment theory). By contrast, we have never decided whether a disparate impact theory of liability is available under the ADEA, see *Markham* v. *Geller*, 451 U. S. 945 (1981) (REHNQUIST, J., dissenting from denial of certiorari), and we need not do so here. Respondent claims only that he received disparate treatment.

In a disparate treatment case, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision. See, *e. g., United States Postal Service Bd. of Governors* v. *Aikens*, 460 U. S. 711 (1983); *Texas Dept. of Community Affairs* v. *Burdine*, 450 U. S. 248, 252–256 (1981); *Furnco Constr. Corp.* v. *Waters*, 438 U. S. 567, 576–578 (1978). The employer may have relied upon a formal, facially discriminatory policy requiring adverse treatment of employees with that trait. See, *e. g., Thurston, supra; Los Angeles Dept. of Water and Power* v. *Manhart*, 435 U. S. 702, 704–718 (1978). Or the employer may have been motivated by the protected trait on an ad hoc, informal basis. See, *e. g., Anderson* v. *Bessemer City*, 470 U. S. 564 (1985); *Teamsters, supra,* at 334–343. Whatever the employer's decisionmaking process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome.

Disparate treatment, thus defined, captures the essence of what Congress sought to prohibit in the ADEA. It is the very essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline with old age. As we explained in *EEOC* v. *Wyoming*, 460 U. S. 226 (1983), Congress' promulgation of the ADEA was prompted by its concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes.

"Although age discrimination rarely was based on the sort of animus motivating some other forms of discrimination, it was based in large part on stereotypes unsup-

ported by objective fact . . . . Moreover, the available empirical evidence demonstrated that arbitrary age lines were in fact generally unfounded and that, as an overall matter, the performance of older workers was at least as good as that of younger workers." *Id.*, at 231.

Thus the ADEA commands that "employers are to evaluate [older] employees . . . on their merits and not their age." *Western Air Lines, Inc.* v. *Criswell,* 472 U. S. 400, 422 (1985). The employer cannot rely on age as a proxy for an employee's remaining characteristics, such as productivity, but must instead focus on those factors directly.

When the employer's decision *is* wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age, as pension status typically is. Pension plans typically provide that an employee's accrued benefits will become nonforfeitable, or "vested," once the employee completes a certain number of years of service with the employer. See 1 J. Mamorsky, Employee Benefits Law § 5.03 (1992). On average, an older employee has had more years in the work force than a younger employee, and thus may well have accumulated more years of service with a particular employer. Yet an employee's age is analytically distinct from his years of service. An employee who is younger than 40, and therefore outside the class of older workers as defined by the ADEA, see 29 U. S. C. § 631(a), may have worked for a particular employer his entire career, while an older worker may have been newly hired. Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily "age based."

The instant case is illustrative. Under the Hazen Paper pension plan, as construed by the Court of Appeals, an employee's pension benefits vest after the employee completes 10 years of service with the company. Perhaps it is true

that older employees of Hazen Paper are more likely to be "close to vesting" than younger employees. Yet a decision by the company to fire an older employee solely because he has nine-plus years of service and therefore is "close to vesting" would not constitute discriminatory treatment on the basis of age. The prohibited stereotype ("Older employees are likely to be ——") would not have figured in this decision, and the attendant stigma would not ensue. The decision would not be the result of an inaccurate and denigrating generalization about age, but would rather represent an *accurate* judgment about the employee—that he indeed is "close to vesting."

We do not mean to suggest that an employer *lawfully* could fire an employee in order to prevent his pension benefits from vesting. Such conduct is actionable under § 510 of ERISA, as the Court of Appeals rightly found in affirming judgment for respondent under that statute. See *Ingersoll-Rand Co.* v. *McClendon*, 498 U. S. 133, 142–143 (1990). But it would not, without more, violate the ADEA. That law requires the employer to ignore an employee's age (absent a statutory exemption or defense); it does not specify *further* characteristics that an employer must also ignore. Although some language in our prior decisions might be read to mean that an employer violates the ADEA whenever its reason for firing an employee is improper *in any respect,* see *McDonnell Douglas Corp.* v. *Green,* 411 U. S. 792, 802 (1973) (creating proof framework applicable to ADEA) (employer must have "legitimate, nondiscriminatory reason" for action against employee), this reading is obviously incorrect. For example, it cannot be true that an employer who fires an older black worker because the worker is black thereby violates the ADEA. The employee's race is an improper reason, but it is improper under Title VII, not the ADEA.

We do not preclude the possibility that an employer who targets employees with a particular pension status on the assumption that these employees are likely to be older

thereby engages in age discrimination. Pension status may be a proxy for age, not in the sense that the ADEA makes the two factors equivalent, cf. *Metz*, 828 F. 2d, at 1208 (using "proxy" to mean statutory equivalence), but in the sense that the employer may suppose a correlation between the two factors and act accordingly. Nor do we rule out the possibility of dual liability under ERISA and the ADEA where the decision to fire the employee was motivated both by the employee's age and by his pension status. Finally, we do not consider the special case where an employee is about to vest in pension benefits as a result of his *age*, rather than years of service, see 1 Mamorsky, *supra*, at § 5.02[2], and the employer fires the employee in order to prevent vesting. That case is not presented here. Our holding is simply that an employer does not violate the ADEA just by interfering with an older employee's pension benefits that would have vested by virtue of the employee's years of service.

Besides the evidence of pension interference, the Court of Appeals cited some additional evidentiary support for ADEA liability. Although there was no direct evidence of petitioners' motivation, except for two isolated comments by the Hazens, the Court of Appeals did note the following indirect evidence: Respondent was asked to sign a confidentiality agreement, even though no other employee had been required to do so, and his replacement was a younger man who was given a less onerous agreement. 953 F. 2d, at 1411. In the ordinary ADEA case, indirect evidence of this kind may well suffice to support liability if the plaintiff also shows that the employer's explanation for its decision—here, that respondent had been disloyal to Hazen Paper by doing business with its competitors—is " 'unworthy of credence.' " *Aikens*, 460 U. S., at 716 (quoting *Burdine*, 450 U. S., at 256). But inferring age motivation from the implausibility of the employer's explanation may be problematic in cases where other unsavory motives, such as pension interference, were present. This issue is now before us in the Title VII con-

text, see *Hicks* v. *St. Mary's Honor Center,* 970 F. 2d 487 (CA8 1992), cert. granted, 506 U. S. 1042 (1993), and we will not address it prematurely. We therefore remand the case for the Court of Appeals to reconsider whether the jury had sufficient evidence to find an ADEA violation.

B

Because we remand for further proceedings, we also address the second question upon which certiorari was granted: the meaning of "willful" in § 7(b) of the ADEA, which provides for liquidated damages in the case of a "willful" violation.

In *Thurston,* we thoroughly analyzed § 7(b) and concluded that "a violation of the Act [would be] 'willful' if the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." 469 U. S., at 126 (internal quotation marks and ellipsis omitted). We sifted through the legislative history of § 7(b), which had derived from § 16(a) of the Fair Labor Standards Act of 1938 (FLSA), 52 Stat. 1069, as amended, 29 U. S. C. § 216(a), and determined that the accepted judicial interpretation of § 16(a) at the time of the passage of the ADEA supported the "knowledge or reckless disregard" standard. See 469 U. S., at 126. We found that this standard was consistent with the meaning of "willful" in other criminal and civil statutes. See *id.,* at 126–127. Finally, we observed that Congress aimed to create a "two-tiered liability scheme," under which some, but not all, ADEA violations would give rise to liquidated damages. We therefore rejected a broader definition of "willful" providing for liquidated damages whenever the employer knew that the ADEA was "in the picture." See *id.,* at 127–128.

In *McLaughlin* v. *Richland Shoe Co.,* 486 U. S. 128 (1988), an FLSA case, we reaffirmed the *Thurston* standard. The question in *Richland Shoe* was whether the limitations pro-

vision of the FLSA, creating a 3-year period for "willful" violations, should be interpreted consistently with *Thurston*. We answered that question in the affirmative.

> "The word 'willful' is widely used in the law, and, although it has not by any means been given a perfectly consistent interpretation, it is generally understood to refer to conduct that is not merely negligent. The standard of willfulness that was adopted in *Thurston*— that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute—is surely a fair reading of the plain language of the Act." 486 U. S., at 133.

Once again we rejected the "in the picture standard" because it would "virtually obliterat[e] any distinction between willful and nonwillful violations." *Id.*, at 132–133.

Surprisingly, the Courts of Appeals continue to be confused about the meaning of the term "willful" in § 7(b) of the ADEA. A number of Circuits have declined to apply *Thurston* to what might be called an informal disparate treatment case—where age has entered into the employment decision on an ad hoc, informal basis rather than through a formal policy. At least one Circuit refuses to impose liquidated damages in such a case unless the employer's conduct was "outrageous." See, *e. g., Lockhart* v. *Westinghouse Credit Corp.*, 879 F. 2d 43, 57–58 (CA3 1989). Another requires that the underlying evidence of liability be direct rather than circumstantial. See, *e. g., Neufeld* v. *Searle Laboratories*, 884 F. 2d 335, 340 (CA8 1989). Still others have insisted that age be the "predominant," rather than simply a determinative, factor. See, *e. g., Spulak* v. *K Mart Corp.*, 894 F. 2d 1150, 1159 (CA10 1990); *Schrand* v. *Federal Pacific Elec. Co.*, 851 F. 2d 152, 158 (CA6 1988). The chief concern of these Circuits has been that the application of *Thurston* would defeat the two-tiered system of liability intended by Congress, because every employer that engages in informal age

discrimination knows or recklessly disregards the illegality of its conduct.

We believe that this concern is misplaced. The ADEA does not provide for liquidated damages "where consistent with the principle of a two-tiered liability scheme." It provides for liquidated damages where the violation was "willful." That definition must be applied here unless we overrule *Thurston,* or unless there is some inherent difference between this case and *Thurston* to cause a shift in the meaning of the word "willful."

As for the first possibility, petitioners have not persuaded us that *Thurston* was wrongly decided, let alone that we should depart from the rule of *stare decisis.* The two-tiered liability principle was simply one interpretive tool among several that we used in *Thurston* to decide what Congress meant by the word "willful," and in any event we continue to believe that the "knowledge or reckless disregard" standard will create two tiers of liability across the range of ADEA cases. It is not true that an employer who knowingly relies on age in reaching its decision invariably commits a knowing or reckless violation of the ADEA. The ADEA is not an unqualified prohibition on the use of age in employment decisions, but affords the employer a "bona fide occupational qualification" defense, see 29 U. S. C. § 623(f)(1), and exempts certain subject matters and persons, see, *e. g.,* § 623(f)(2) (exemption for bona fide seniority systems and employee benefit plans); § 631(c) (exemption for bona fide executives and high policymakers). If an employer incorrectly but in good faith and nonrecklessly believes that the statute permits a particular age-based decision, then liquidated damages should not be imposed. See *Richland Shoe, supra,* at 135, n. 13. Indeed, in *Thurston* itself we upheld liability but *reversed* an award of liquidated damages because the employer "acted [nonrecklessly] and in good faith in attempting to determine whether [its] plan would violate the ADEA." 469 U. S., at 129.

Nor do we see how the instant case can be distinguished from *Thurston,* assuming that petitioners did indeed fire respondent because of his age. The only distinction between *Thurston* and the case before us is the existence of formal discrimination. Age entered into the employment decision there through a formal and publicized policy, and not as an undisclosed factor motivating the employer on an ad hoc basis, which is what respondent alleges occurred here. But surely an employer's reluctance to acknowledge its reliance on the forbidden factor should not cut *against* imposing a penalty. It would be a wholly circular and self-defeating interpretation of the ADEA to hold that, in cases where an employer more likely knows its conduct to be illegal, knowledge alone does not suffice for liquidated damages. We therefore reaffirm that the *Thurston* definition of "willful"— that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute—applies to all disparate treatment cases under the ADEA. Once a "willful" violation has been shown, the employee need not additionally demonstrate that the employer's conduct was outrageous, or provide direct evidence of the employer's motivation, or prove that age was the predominant, rather than a determinative, factor in the employment decision.

The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

JUSTICE KENNEDY, with whom THE CHIEF JUSTICE and JUSTICE THOMAS join, concurring.

I agree with the Court that the Court of Appeals placed improper reliance on respondent's evidence of pension interference and that the standard for determining willfulness announced in *Trans World Airlines, Inc.* v. *Thurston,* 469 U. S. 111 (1985), applies to individual acts of age discrimination as

well as age discrimination manifested in formal, company-wide policy. I write to underscore that the only claim based upon the Age Discrimination in Employment Act (ADEA), 29 U. S. C. § 621 *et seq.*, asserted by respondent in this litigation is that petitioners discriminated against him because of his age. He has advanced no claim that petitioners' use of an employment practice that has a disproportionate effect on older workers violates the ADEA. See App. 29–30 (amended complaint); 5 Record 71–76 (jury instructions). As a result, nothing in the Court's opinion should be read as incorporating in the ADEA context the so-called "disparate impact" theory of Title VII of the Civil Rights Act of 1964, 42 U. S. C. §§ 2000e to 2000e–17. As the Court acknowledges, *ante,* at 610, we have not yet addressed the question whether such a claim is cognizable under the ADEA, and there are substantial arguments that it is improper to carry over disparate impact analysis from Title VII to the ADEA. See *Markham* v. *Geller,* 451 U. S. 945 (1981) (REHNQUIST, J., dissenting from denial of certiorari); *Metz* v. *Transit Mix, Inc.,* 828 F. 2d 1202, 1216–1220 (CA7 1987) (Easterbrook, J., dissenting); Note, Age Discrimination and the Disparate Impact Doctrine, 34 Stan. L. Rev. 837 (1982). It is on the understanding that the Court does not reach this issue that I join in its opinion.