Joel HERNANDEZ, Plaintiff–
Appellant,

v.

HUGHES MISSILE SYSTEMS COM-
PANY, an Arizona corporation;
Hughes Aircraft Company, a Dela-
ware corporation; Raytheon Compa-
ny, a Delaware corporation, Defen-
dants–Appellees.

No. 01–15512.

United States Court of Appeals,
Ninth Circuit.

March 23, 2004.

Stephen G. Montoya, Montoya Jumenez, P.A., Phoenix, AZ, for the appellant.

Paul Grossman, Paul, Hastings, Janofsky & Walker, LLP, Los Angeles, CA, for the appellees.

Before: REINHARDT, MAGILL,[*] and FISHER, Circuit Judges.

## OPINION

REINHARDT, Circuit Judge.

The Supreme Court has remanded this case for our consideration of one question, whether there was "sufficient evidence from which a jury could conclude that [Raytheon] did make its employment decision based on [Joel Hernandez's] status as disabled" despite its proffered explanation.[1] *Raytheon Co. v. Hernandez,* —— U.S. ——, ——, 124 S.Ct. 513, 520, 157 L.Ed.2d 357 (2003). Because viewing the record in the light most favorable to Hernandez, it gives rise to a genuine issue of material fact as to whether the decision not to re-hire him was based on his disability, we again reverse the district court's grant of summary judgment.

## I

Joel Hernandez worked for Hughes Missile Systems, which has since been purchased by Raytheon Company, for 25 years, beginning in 1966.[2] In 1986, his

---

[*] The Honorable Frank Magill, United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. Raytheon has waived its challenge to our holding that Hernandez has proffered sufficient evidence to make out a prima facie case of discrimination by not challenging this as-

pect of our decision in its petition for certiorari to the Supreme Court.

2. We recite only a truncated version of the facts relevant to the question presented here. A complete statement is included in our origi-

drug and alcohol problem began affecting his conduct at work. In August of that year, rather than face termination for absenteeism as a result of this problem, Hernandez accepted Raytheon's offer to enter a treatment program. Upon finishing the treatment program, Hernandez went back to work for the company.

In 1991, Hernandez's attendance problems recurred. On July 11, 1991, he arrived at work demonstrating signs of drug or alcohol impairment. He submitted to a drug test pursuant to company policy. After testing positive for cocaine, he resigned in lieu of being discharged for violating the company's workplace code of conduct. The "Employee Separation Summary" noted the reason for Hernandez's separation only as "discharge for personal conduct (quit in lieu of discharge)."

Since being fired, Hernandez has worked consistently as a maintenance worker for Marathon Resource, Inc., earning substantially less than he made at Raytheon. From July of 1992 through at least the time of the summary judgment proceedings in January of 2001, Hernandez was "clean and sober."

On January 24, 1994, Hernandez applied with Raytheon for the same position that he held prior to his discharge, stating on his application that he had previously been employed and attaching letters from his pastor about his active church participation and his Alcoholics Anonymous ("AA") sponsor/counselor about his regular attendance at meetings and his commitment to the program. In his April 26th letter, Hernandez's AA sponsor, John Lyman wrote:

Gentleman:

I have known Mr. Hernandez for almost a year. I have seen him occasionally at his place of employment and frequently at meetings of Alcoholics Anonymous.

I have worked with recovering alcoholics for ten years and have screened people for the New Hampshire Department of Motor Vehicles and referrals from state and federal parole boards, among my other duties.

I volunteered to write you in behalf of Joel Hernandez as I have seen steady and consistent progress in his recovery from this disease.

Joel attends A.A. regularly, participates in discussion when appropriate, is maintaining his sobriety and is all in all a good and active member.

Alcoholics Anonymous has clearly been demonstrated as the best recovery tool for alcoholics and Joel's commitment to the program demonstrates to me his willingness to accept responsibility for his recovery.... Sincerely, John Lyman

Joanne Bockmiller, in Raytheon's Labor Relations Department, reviewed Hernandez's application and rejected it. Bockmiller stated that as part of the initial screening of applicants, the company's practice was to determine if the applicant had previously worked at the company. If, as here, the employee indicated that he had, then it was Raytheon's practice to provide the person reviewing the application with the former employee's entire personnel file and everything the applicant had submitted, presumably so the reviewer could consider this information before making a determination. Bockmiller testified that she received Hernandez's application, including the attached letters, and his personnel file. The file would have revealed Hernandez's prior misconduct, the drug test and results, and evidence of his continuous "alcohol dependence," "cannabis dependence,"

and "cocaine abuse," and of his referral to a treatment program.

When asked whether she had reviewed the entire personnel file, Bockmiller first testified: "I don't recall specifically if I would have reviewed every document, but I did have access to the file." When asked on a separate occasion what information in the file she had reviewed, she answered, "I remember reviewing the Employee Separation Summary." Bockmiller insisted that once she reviewed the Employee Separation Summary and saw that Hernandez had been discharged for violating workplace conduct rules, she rejected his application outright on the basis of the company's unwritten policy of not rehiring former employees whose employment ended due to violations of company personnel conduct rules. She testified that she was not told "specifically" about this policy but learned about it "through the process of working within Human Resources."

After being informed that his application was rejected, Hernandez filed charges with the Equal Employment Opportunity Commission ("EEOC"). In its response to these charges, Raytheon, through its Manager of Diversity Development, George Medina, took the following position:

The ADA specifically exempts from protection individuals currently engaging in the illegal use of drugs when the covered entity acts on the basis of that use. Contrary to Complainant's unfounded allegation, his non-selection for rehire is not based on any legitimate disability. Rather, Complainant's application was rejected based on his demonstrated drug use while previously employed and the complete lack of evidence indicating successful drug rehabilitation.

The Company maintains it's [sic] right to deny re-employment to employees terminated for violation of Company rules and regulations ... Complainant

has provided no evidence to alter the Company's position that Complainant's conduct while employed by [petitioner] makes him ineligible for rehire.

Section 1630.3(b) of the ADA provides that the term "disability" may not exclude an individual who: has successfully completed a supervised drug rehabilitation program and is no longer engaging in illegal use of drugs; or an individual who is participating in a supervised rehabilitation program and is no longer engaging in such use. However, this provision is not applicable in this situation as Complainant has provided no evidence to demonstrate he has either successfully completed or is currently undergoing drug rehabilitation.

When questioned at his deposition, Medina affirmed that the information contained in this position statement was factually correct. Medina admitted, however, that, at the time he wrote the letter, he did not have any information that would have suggested that Hernandez was not in full recovery from his addiction. Despite his written statement, which did not include any mention of the company's alleged uniform policy of not rehiring individuals who violated workplace conduct rules, Medina testified that it was his understanding that Hernandez's application had been rejected on the basis of this policy.

Raytheon had promulgated an extensive set of written personnel policies covering various subjects, including substance abuse. It did not include the purported uniform policy of not rehiring anyone fired for misconduct (including on account of substance abuse). Medina testified that he has never seen a written version of the uniform no rehire policy. He stated that he learned about it by working at Raytheon, but he could not remember who mentioned it to him.

568

On November 20, 1997, the EEOC issued a determination on the merits of Hernandez's charge in his favor, finding that "[t]he evidence shows [Raytheon] rejected Charging Party's application based on his record or past alcohol and drug use." EEOC conciliation efforts attempted thereafter were unsuccessful. On June 22, 1998, the EEOC issued Hernandez a right to sue letter.

## II

■ The Americans with Disabilities Act of 1990 ("ADA"), 104 Stat. 327, as amended, 42 U.S.C. § 12101 *et seq.*, makes it unlawful for an employer, with respect to hiring, to "discriminate against a qualified individual with a disability because of the disability of such individual." § 12112(a). As applied here, the ADA protects individuals "who have successfully completed or are participating in a supervised drug rehabilitation program and are no longer using illegal drugs, as well as individuals who are erroneously regarded as using drugs when in fact they are not." *Collings v. Longview Fibre Co.*, 63 F.3d 828, 831–32 (9th Cir.1995); *see also* 42 U.S.C. §§ 12102(2)(B)-(C); 29 C.F.R. § 1630.2(g)(2)-(3).

■ We review a grant of summary judgment de novo and must view the evidence in the light most favorable to the petitioner, drawing all reasonable inferences in his favor. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150–51, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995). Hernandez bears the burden of proving, by a preponderance of the evidence, that his disability "actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome." *Reeves*, 530 U.S. at 141, 120 S.Ct. 2097 (alteration in original) (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993)); *see also Snead v. Metro. Property & Cas. Ins. Co.*, 237 F.3d 1080, 1093 (9th Cir.2001) (holding that the traditional framework for analyzing Title VII cases applies in ADA cases). Hernandez may meet this burden by "showing that [Raytheon's] proffered explanation," here that its reason was an oral policy of never rehiring anyone discharged for any violation of the personnel conduct rules, is "unworthy of credence." *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097. At the pretext stage, the "trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom ... on the issue of whether the defendant's explanation is pretextual." *Id.* Evidence discrediting the reason put forward by Raytheon together with the elements of Hernandez's prima facie case may suffice to show intentional discrimination.[3] *Id.* at 146–47, 120 S.Ct. 2097. Further, we may consider other circumstantial (as well as direct) evidence from which a reasonable jury could conclude that the employee's disability actually motivated the decision not to rehire. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 2155, 156 L.Ed.2d 84 (2003).

## III

■ On the basis of the evidence presented, we conclude that there is a genuine issue of material fact as to whether Raytheon failed to re-hire Hernandez because of his "status as an alcoholic," rather than in reliance on a uniform no re-hire policy.

---

**3.** Under appropriate circumstances, "the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Id.*

A reasonable juror could find that, despite Bockmiller's testimony to the contrary, she was aware of the fact that Hernandez had been a substance-abuser and based her decision on that ground. In this regard, we have already concluded that:

It is true that Bockmiller testified that she did not know of Hernandez's history of drug addiction or of the reason for his leaving the company in 1991. However, she also testified that at the time of her review she pulled Hernandez's entire personnel file, which would have included the 1991 drug test results. She also stated that, although she did not remember what Hernandez attached to his application, she would have seen any materials he submitted, which included the letter from his A.A. counselor. It would be reasonable to infer from the presence of this letter that Bockmiller was aware of the fact that Hernandez was a recovering alcoholic and that, with that knowledge, she would have checked his personnel file to determine the reason for his earlier termination.

*Hernandez,* 298 F.3d at 1034.

Further, a finder of fact could reasonably infer that Hernandez's history of addiction, not an oral policy, actually motivated Bockmiller's decision not to re-hire him. In Raytheon's written explanation to the EEOC of its reasons for refusing to consider Hernandez's application it admitted that the refusal to re-hire was based on Hernandez's history of substance abuse.[4] *See* Position Statement, *infra,* p. 567 ("[Hernandez's] application was rejected based on his demonstrated drug use while previously employed and the complete lack of evidence indicating successful drug re-

habilitation."). Raytheon's first mention of its purported "unwritten policy" of uniformly refusing to re-hire individuals previously fired for misconduct occurred after EEOC conciliation efforts had terminated, and Hernandez had brought this action against the company. From the fact that Raytheon has provided conflicting explanations of its conduct, a jury could reasonably conclude that its most recent explanation was pretextual. *See E.E.O.C. v. Sears Roebuck & Co.,* 243 F.3d 846, 853 (4th Cir.2001) ("[A] factfinder could infer from the late appearance of [the employer's] current justification that it is a post-hoc rationale, not a legitimate explanation for [its] decision not to hire [the employee]."); *Tyler v. RE/MAX Mountain States, Inc.,* 232 F.3d 808, 813 (10th Cir.2000) ("We are disquieted ... by an employer who 'fully' articulates its reasons for the first time months after the decision was made."); *Dominguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 432 (1st Cir.2000) ("[W]hen a company, at different times, gives different and arguably inconsistent explanations [regarding its reasons for terminating an employee], a jury may infer that the articulated reasons are pretextual."); *Thurman v. Yellow Freight Sys., Inc.,* 90 F.3d 1160, 1167 (6th Cir.1996) ("An employer's changing rationale for making an adverse employment decision can be evidence of pretext."), *opinion amended by* 97 F.3d 833 (6th Cir.1996).

Finally, the jury could infer from the fact that nobody at Raytheon could identify the origin, history, or scope of the alleged unwritten policy, that it either did not exist or was not consistently applied. A juror could also infer from the fact that Hughes has specific written policies

---

4. Raytheon now attempts to disavow its admission by asserting that it was drafted by an uninformed part-time employee and, therefore, Raytheon and Medina cannot be held accountable for its contents. The attempted

disavowal serves at best to raise a question of fact, particularly as Medina testified in his deposition not only that he signed the statement after having read it, but that the information in it was correct.

regarding drug abuse, which, unlike the policy on which it now relies, are very favorable to temporary and part-time employees, that those written policies are the relevant policies regarding the matter before us.[5]

In view of the above, we conclude that Hernandez has presented sufficient evidence from which a reasonable jury could determine that Raytheon refused to re-hire him because of his past record of addiction and not because of a company rule barring re-hire of previously terminated employees.

REVERSED and REMANDED for FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

---

5. In our initial opinion, because of the legal conclusion we reached, we proceeded on the assumption that there was a policy that was uniformly applied and did not examine the question whether an issue of fact existed regarding such policy and its application. Thus, footnote 17 overstated the record with respect to such policy. *Hernandez,* 298 F.3d at 1036, n. 17. As the Supreme Court pointed out, however, the footnote is inconsistent with our basic holding in that initial decision. *See Raytheon Co.,* —— U.S. at ——, n. 5, 124 S.Ct. at 519, n. 5. Accordingly, we withdraw the footnote.