**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

SANTIAGO LOPEZ,
       *Plaintiff-Appellant,*

v.

PACIFIC MARITIME ASSOCIATION,
       *Defendant-Appellee,*

and

INTERNATIONAL LONGSHORE AND
WAREHOUSE UNION; and
INTERNATIONAL LONGSHORE AND
WAREHOUSE UNION LOCAL 13,
       *Defendants.*

No. 09-55698

D.C. No.
2:06-cv-04154-GW-
JTL

ORDER
AMENDING
OPINION AND
DENYING
PETITION FOR
REHEARING AND
PETITION FOR
REHEARING EN
BANC AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted
November 1, 2010—Pasadena, California

Filed March 2, 2011
Amended September 21, 2011

Before: Harry Pregerson, Kenneth F. Ripple,* and
Susan P. Graber, Circuit Judges.

*The Honorable Kenneth F. Ripple, Senior United States Circuit Judge
for the Seventh Circuit, sitting by designation.

17883

Opinion by Judge Graber;
Partial Concurrence and Partial Dissent by Judge Pregerson

**COUNSEL**

Andrea L. Cook, Andrea Cook & Associates, Long Beach, California, for the plaintiff-appellant.

Jason M. Steele, Morgan, Lewis & Bockius LLP, Los Angeles, California, for the defendant-appellee.

Daniel T. Vail, U.S. Equal Employment Opportunity Commission, Washington, D.C.; Claudia Center, The Legal Aid Society—Employment Law Center, San Francisco, California; and Peter Blanck, Burton Blatt Institute, Syracuse University, Syracuse, New York, for the amici curiae.

**ORDER**

The opinion filed March 2, 2011, is replaced by the amended opinion filed concurrently with this order.

With these amendments, Judges Ripple and Graber have voted to deny the petition for panel rehearing, and Judge Pregerson has voted to grant it. Judge Graber has voted to deny the petition for rehearing en banc, and Judge Ripple has so recommended. Judge Pregerson has voted to grant it.

The full court has been advised of the petition for rehearing en banc, and no judge of the court has requested a vote on it.

The petition for panel rehearing and petition for rehearing en banc are DENIED. No further petitions for rehearing will be accepted.

---

## OPINION

GRABER, Circuit Judge:

Plaintiff Santiago Lopez appeals from the entry of summary judgment in favor of Defendant Pacific Maritime Association on Plaintiff's claims for disparate treatment and disparate impact under the federal Americans with Disabilities Act of 1990 ("ADA") and the state Fair Employment and Housing Act ("FEHA"). On de novo review, *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1047 (9th Cir. 2008), we affirm.

I.  *Background*[1]

Defendant represents the shipping lines, stevedore companies, and terminal operators that run the ports along the west coast of the United States. As the collective bargaining agent and payroll administrator of those employers, Defendant enforces the policies that govern the hiring of longshore workers who work along the west coast. One of those policies is a "one-strike rule," which eliminates from consideration any applicant who tests positive for drug or alcohol use during the pre-employment screening process. Defendant notifies its applicants at least seven days in advance of administering the drug test. Failing the drug test, even once, disqualifies an applicant permanently from future employment.

---

[1]Because this case comes to us after the entry of summary judgment for Defendant, we state the facts in the light most favorable to Plaintiff. *Dark v. Curry County*, 451 F.3d 1078, 1082 n.2 (9th Cir. 2006).

Plaintiff wants to be a longshoreman. He first applied in 1997 at the port in Long Beach, California. At that time, however, Plaintiff suffered from an addiction to drugs and alcohol. When Defendant administered its standard drug test, Plaintiff tested positive for marijuana. Defendant therefore disqualified Plaintiff from further consideration under the one-strike rule.

In late 2002, Plaintiff recognized the deleterious effects on his health that his addictions had caused. He became clean and sober and, in 2004, reapplied to be a longshoreman. Because of the one-strike rule, Defendant rejected Plaintiff's application. At that time, Defendant did not know of Plaintiff's earlier addiction. Plaintiff attempted to appeal, but Defendant never entertains appeals from disqualifications arising from positive drug tests.

Plaintiff then filed this action, claiming that Defendant violated the ADA and the FEHA by discriminating against him on the basis of his protected status as a rehabilitated drug addict. *See* 42 U.S.C. §§ 12112(a), 12114(b)(1) (expressly protecting from employment discrimination any person who has "been rehabilitated successfully and is no longer engaging in [illegal drug use]"); Cal. Gov't Code § 12926(*l*) (incorporating by reference any protection in the ADA not expressly incorporated into the FEHA). The district court granted summary judgment to Defendant. Plaintiff timely appeals.

## II.  *Plaintiff's Disparate Treatment Claim*

[1] In support of his disparate treatment claim, Plaintiff makes three arguments. He first argues that the one-strike rule facially discriminates against recovering or recovered drug addicts. We disagree. The rule eliminates *all* candidates who test positive for drug use, whether they test positive because of a disabling drug addiction or because of an untimely decision to try drugs for the first time, recreationally, on the day before the drug test. Conversely, the rule allows a drug-

addicted applicant who happens to be sober at the time of the drug test to complete pre-employment processing successfully. Here, for example, had Plaintiff applied for the *first* time in 2004, he would qualify for employment despite his status as a recovering addict. The triggering event for purposes of the one-strike rule is a failed drug test, not an applicant's drug addiction.

**[2]** The Supreme Court's opinion in *Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003), supports our view of the one-strike rule. There, the Court held that an employer's policy not to rehire workers who lost their jobs due to drug-related misconduct constituted a "neutral," "legitimate, [and] nondiscriminatory reason for refusing to rehire" the aggrieved employee. *Id.* at 53. The Court disapproved of the argument that, because the employee's misconduct related to his drug addiction, the employer's refusal to rehire him on account of that misconduct violated the ADA. *Id.* at 54 n.6. The ADA prohibits employment decisions made because of a person's qualifying disability, not decisions made because of factors merely related to a person's disability. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993) (holding that an employer's decision "wholly motivated by factors other than age" does not constitute age discrimination, even if "the motivating factor is correlated with age").

Second, Plaintiff alleges that Defendant adopted the one-strike rule intentionally to exclude recovering and recovered drug addicts from its work force. The record belies that allegation. Before the adoption of the one-strike rule, the longshore industry suffered numerous serious accidents and injuries, including several fatalities. Defendant attributed those accidents in part to a culture that accepted the use of drugs and alcohol in the workplace. Defendant thought that it could reduce such accidents by eliminating applicants who might be more likely to use drugs or alcohol at work.

With the support of the union that represented the longshore workers, Defendant began administering drug tests to

new applicants. Defendant decided to make the disqualification of applicants who tested positive permanent because it thought that applicants who could not abstain from using an illegal drug, even after receiving advance notice of an upcoming drug test, showed less responsibility and less interest in the job than applicants who passed the drug test. Thus, Defendant's reasons for rejecting applicants who test positive did not include a calculation that an applicant might test positive because of a drug addiction, rather than because of recreational use.

**[3]** In short, nothing about the history of the one-strike rule leads us to conclude that Defendant adopted the rule with a discriminatory purpose. The ADA and the FEHA protect people who are recovering or who have recovered from a drug addiction; they do not protect people who are using illegal drugs when they apply for a job. It was lawful for Defendant to eliminate applicants who were using drugs when they applied to be longshore workers. It was likewise lawful for Defendant to disqualify those applicants permanently. Nothing in the record suggests that Defendant targeted or attempted to target recovered drug addicts, as distinct from recreational users.

**[4]** Finally, Plaintiff argues that the district court improperly granted summary judgment because Defendant learned of Plaintiff's drug addiction shortly after disqualifying him. We fail to see how Plaintiff's attempt to inform Defendant of his status *after* Defendant disqualified him has any bearing on whether Defendant decided to disqualify Plaintiff *because of* his protected status. *See Raytheon*, 540 U.S. at 54 n.7 ("If [the employer] were truly unaware that . . . a disability existed, it would be impossible for her hiring decision to have been based, even in part, on [the employee's] disability. And, if no part of the hiring decision turned on [the employee's] status as disabled, he cannot, *ipso facto*, have been subject to disparate treatment."); *Brundage v. Hahn*, 66 Cal. Rptr. 2d 830, 836 (Ct. App. 1997) (affirming summary judgment on an

employee's ADA and FEHA disparate treatment claims because the employer could not have discriminated on the basis of a disability of which it did not know).

Plaintiff attempts to rely on our opinion in *Hernandez v. Hughes Missile Systems Co.*, 362 F.3d 564 (9th Cir. 2004), to show that he has raised a genuine issue of material fact with respect to his disparate treatment claim. But the facts in *Hernandez* clearly distinguish it from the circumstances here. In *Hernandez*, an employer fired an employee for failing to pass his drug test. *Id.* at 566. The employee later became sober and reapplied. Unlike in this case, the employee included with his new application a letter from his Alcoholics Anonymous sponsor that informed the employer of the employee's "steady and consistent progress in his recovery from [his] disease." *Id.* That piece of evidence was crucial because, even though the employer claimed that it had not read the letter, a reasonable juror could have found that it did. *Id.* at 566-67. Consequently, we reversed summary judgment because "a reasonable jury could determine that [the employer] refused to re-hire [the employee] because of his past record of addiction and not because of a company rule barring re-hire of previously terminated employees." *Id.* at 570.

**[5]** Plaintiff has no such evidence. His letter informing Defendant of his drug addiction came only *after* Defendant's decision to disqualify him from further processing. Accordingly, Plaintiff's disparate treatment claim fails because there is no evidence in this record that Defendant disqualified him because of his protected status.

III.   *Plaintiff's Disparate Impact Claim*

Plaintiff's disparate impact claim also fails. He argues that the one-strike rule disparately affects recovering drug addicts by eliminating anyone who previously tested positive for drug use. But he offers only the bald assertion that this result *must* be so. We disagree because, as we have noted, the rule does

not *necessarily* screen out recovering drug addicts dispropor-
tionately.

A.    Initially, we observe that Plaintiff has litigated his dis-
parate impact claim from start to finish on the familiar theory
taken from discrimination claims brought under Title VII, 42
U.S.C. §§ 2000e to 2000e-4. In Plaintiff's opposition to
Defendant's motion for summary judgment, for example, he
told the district court that, "[i]n order to state a prima facie
case of disparate impact discrimination, the Plaintiff must
show that employment practices that are facially neutral fall
more harshly on one group than another and cannot be justi-
fied by business necessity." He cited two Title VII cases, *Wat-
son v. Fort Worth Bank & Trust*, 487 U.S. 977 (1988), and
*Griggs v. Duke Power Co.*, 401 U.S. 424 (1971). His opening
brief to us restated the same principle, again citing *Watson* as
controlling precedent. The district court concluded from that
argument that Plaintiff intended to prove his disparate impact
claim through the usual method of proving "disparate impact"
as set out in Title VII cases. We did, too.

In a petition for rehearing filed after our original opinion
issued, however, Plaintiff changed his theory. With support
from several *amici curiae*,[2] Plaintiff now argues that we erred
by using Title VII cases to guide our analysis, because dispa-
rate impact claims under the ADA require a different

---

[2]Those *amici* are the U.S. Equal Employment Opportunity Commission,
the American Association of People with Disabilities, the American Dia-
betes Association, the Association on Higher Education and Disability, the
Disability Independence Group, the Disability Rights Advocates, the Dis-
ability Rights Education and Defense Fund, Inc., the Disability Rights
Legal Center, the Drug Policy Alliance, the Epilepsy Foundation of Amer-
ica, John A. Lancaster, Judge David L. Bazelon Center for Mental Health
Law, the Legal Aid Society—Employment Law Center, the National Dis-
ability Rights Network, the National Employment Lawyers Association,
the National Federation of the Blind, the National Health Law Program,
the New York Branch of the International Dyslexia Association, and the
Swords to Plowshares: Veterans Rights Organization.

approach. Specifically, § 12112(b)(6) of the ADA makes unlawful any "selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless . . . consistent with business necessity." Applying § 12112(b)(6) here, Plaintiff argues, he need not make a "formal statistical showing" of a disparate impact because the one-strike rule *tends* to screen out recovered drug addicts, whether it does so in fact or not.

Plaintiff plainly waived his new theory, and we therefore do not address it on the merits.[3] To allow Plaintiff to make this argument now, after the case has been litigated, appealed, briefed, submitted, and decided, would deprive us of the assistance of our colleague below and would deprive Defendant of the opportunity to meet Plaintiff's new argument in the proper course. For those reasons, we adhere to the twin requirements that a litigant must argue clearly all of his theories of relief, both in the district court and in his opening brief, to preserve those theories on appeal. *Alameda Books, Inc. v. City of Los Angeles*, 631 F.3d 1031, 1044 (9th Cir. 2011); *United States v. City of Arcata*, 629 F.3d 986, 992 (9th Cir. 2010). Because Plaintiff failed to raise this new argument in either of those places, he has waived it. We emphasize that we express no view on what application, if any, § 12112(b)(6) would have to the facts of this case. That question is not before us.

**[6]** B. To create a genuine issue of fact under the theory that Plaintiff chose to pursue, Plaintiff must have produced evidence from which a fact-finder reasonably could conclude that the one-strike rule results in fewer recovered drug addicts in Defendant's employ, as compared to the number of qualified recovered drug addicts in the relevant labor market. *See*

---

[3]We respectfully disagree with our dissenting colleague's assertion that Plaintiff argued in his opening brief that § 12112(b)(6) applies. Plaintiff cited the statute only once, as part of a generic overview of the statutory framework; his actual argument neither cited § 12112(b)(6) nor encompassed, even without citation, the argument he now wishes he had made.

*Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 308 (1977) (comparing the racial composition of the employer's work force to the racial composition of the qualified work force in the relevant labor market). The record contains neither statistical nor anecdotal evidence to that effect.

Plaintiff did present to the district court an affidavit from a forensic economist. The economist concluded that Plaintiff had a viable disparate impact claim[4] because, after "[c]omparing the selection rate of the whole population [of longshore worker applicants] (48%) versus the population of the 'protected group' (0%)," she found it "evident that [the one-strike rule] is in violation of the 80% Rule." *See* 29 C.F.R. § 1607.4(D) ("A selection rate for any race, sex, or ethnic group which is less than [80%] of the rate for the group with the highest rate will generally be regarded by the Federal enforcement agencies as evidence of adverse impact, while a greater than [80%] rate will generally not be regarded by Federal enforcement agencies as evidence of adverse impact.").

**[7]** Although the economist did not define the "protected group," she appears to have made the same mistake as Plaintiff. The correctly defined "protected group" for purposes of the ADA and the FEHA is recovered drug addicts. It does not matter whether such individuals applied to Defendant previously. If the number of recovered addicts in Defendant's workforce roughly reflects the number of recovered addicts in the relevant labor market, then Defendant has not broken the law under Plaintiff's theory. By defining the "protected group" as the number of recovered drug addicts *who previously applied to Defendant and were rejected because they failed a drug test*, Plaintiff and his expert assume their own conclusion. Although Defendant will never hire those people

---

[4]We assume, without deciding, that the economist's affidavit includes some admissible evidence, while noting that it contains a legal conclusion. *See Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 777 (9th Cir. 2010) ("Pure legal conclusions are not admissible as factual findings.").

and thus their selection rate always will be zero, we still do not know how many recovered drug addicts Defendant hires versus how many recovered drug addicts it turns away, nor do we know how many of those turned away are not drug addicts, recovering or otherwise.

**[8]** Plaintiff complains that our standard places an unfair burden on him because he has no way to know how many recovering or recovered drug addicts Defendant has disqualified. Neither can he determine the proportion of recovering or recovered drug addicts in the relevant labor market because, he argues, state law prevents him from inquiring into a person's history of drug abuse. We recognize the challenge involved in bringing a disparate impact claim of this kind, but both logic and precedent require him to produce *some* evidence that tends to show that the one-strike rule excludes recovering or recovered drug addicts disproportionately. Plaintiff introduced no such evidence. At the summary judgment stage, a party no longer can rely on allegations alone, however plausible they may be. *Berger v. City of Seattle*, 569 F.3d 1029, 1077-78 (9th Cir. 2009) (en banc). Because the record contains no evidence supporting an essential element of Plaintiff's disparate impact claim, we must affirm the summary judgment on that claim.

## IV.    *Conclusion*

We recognize that the one-strike rule imposes a harsh penalty on applicants who test positive for drug use. As Defendant candidly concedes, many people question the rule's reasonableness in light of the fact that many people who use drugs later rehabilitate themselves, as Plaintiff exemplifies. But unreasonable rules do not necessarily violate the ADA or the FEHA. Because Plaintiff failed to establish that Defendant intentionally discriminated against him on the basis of his protected status or that the one-strike rule disparately affects recovered drug addicts, we affirm the summary judgment in favor of Defendant.

AFFIRMED.

---

PREGERSON, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's conclusion that the district court did not err in granting summary judgment to Defendant on Lopez's disparate treatment claim. But, I disagree with the majority's decision to foreclose Lopez's disparate impact claim, and I would allow that claim to proceed for the following reasons.

*Disparate Impact Claim*

Under § 12112(b)(6) of the Americans with Disabilities Act ("ADA"), it is unlawful for employers to institute any "selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless . . . consistent with business necessity." 42 U.S.C. § 12112(b)(6). Lopez contends that lifetime employment bans for drug test failures are per se violations of the ADA because they invariably exclude certain protected individuals from employment based on *past* behavior related to their disability.[1] Employers may not reject an applicant because the applicant was previously addicted to drugs. *See Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 568 (9th Cir. 2004). Yet Lopez contends that this is exactly what the Pacific Maritime Association's lifetime hiring ban does. In support of his disparate impact claim, Lopez offered expert testimony that drug addicts are disproportionately affected by the lifetime employment ban. In addition, Lopez showed that at least

---

[1]This is distinct from either *current* drug use or workplace misconduct, both of which employers may lawfully penalize. *See, e.g.*, Amy L. Hennen, *Protecting Addicts in the Employment Arena: Charting a Course Toward Tolerance*, 15 Law & Ineq. 157, 172-74 (1997).

twenty-seven individuals were subjected to the ban during roughly the same period he was. Because the identities of those individuals are protected, the court does not know which, if any, of them were drug addicts rather than casual users, or which of the addicts, if any, were later rehabilitated. It is clear, however, that a significant number of individuals were impacted by the lifetime employment ban. It is also reasonable to infer that at least some of those individuals, like Lopez, were at one time addicted to drugs, but after participating in a drug rehabilitation program, were able to overcome their addiction. Viewing the evidence in the light most favorable to the Plaintiff, and making all reasonable inferences in his favor, *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001), Lopez has put forward sufficient evidence to establish a prima facie case of adverse impact on the protected class.

Moreover, the district court erred in requiring statistical evidence to support Lopez's disparate impact claim under the ADA. While statistical evidence is generally required to show disparate impact in, for example, age discrimination cases[2] and discrimination cases under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., such evidence is not required for similar claims under the ADA:

> It is not necessary to make statistical comparisons between a group of people with disabilities and people who are not disabled to show that a person with a disability is screened out by a selection standard. Disabilities vary so much that it is difficult, if not impossible, to make general determinations about the effect of various standards, criteria and procedures on "people with disabilities." Often, there may be little or no statistical data to measure the impact of a procedure on any "class" of people with a par-

---

[2]*See Pottenger v. Potlatch Corp.*, 329 F.3d 740, 749 (9th Cir. 2003).

ticular disability compared to people without disabil-
ities.

Barbara T. Lindemann & Paul Grossman, *Employment Dis-
crimination Law* 953 (C. Geoffrey Weirich ed., 4th ed. 2007)
(quoting EEOC, *Technical Assistance Manual* § 4.3 (1992)).

Furthermore, it is manifestly unreasonable to require statis-
tical data regarding the number of recovering addicts either
hired by an employer or screened out by a drug test. Recover-
ing addicts are unlikely to identify themselves to employers,
or to a plaintiff's investigator in a lawsuit such as this, even
if asked. One of the primary limitations suffered by individu-
als recovering from addiction is the continuing stigma associ-
ated with their prior drug and alcohol use.[3] It is not an
accident that nearly every 12-step support group includes the
word "anonymous" in its name. Thus, statistical evidence on
recovering addicts is, as a practical matter, rarely available. It
follows that if we are to give effect to the ADA's express pro-
tection of individuals recovering from drug and alcohol addic-
tion, we must, at the summary judgment stage, liberally
construe any evidence suggesting an adverse impact on those
individuals.

I do not suggest that we now determine whether lifetime
employment bans resulting from a positive drug test necessar-
ily violate the ADA. It is clear, though, that where such a test
is mandated by an employer who exercises singular control
over an industry spanning the whole west coast of the United
States, the potential impact of the policy is broad and perva-
sive. I would allow Lopez's case to proceed to determine
whether Pacific Maritime Association's lifetime employment
ban in fact has an adverse impact on recovering addicts.
Accordingly, I dissent from the majority's affirmance of the

---

[3]*See* Brief of the Betty Ford Center et al., as Amici Curiae Supporting
Respondent, *Raytheon v. Hernandez*, 540 U.S. 44 (2003) (No. 02-749),
2003 WL 21649671 at *21-22.

district court's grant of summary judgment in favor of Pacific
Maritime Association on the disparate impact claim.

*Waiver of Lopez's § 12112(b)(6) Claim*

The majority concludes that Lopez has waived his disparate
impact claim under § 12112(b)(6) of the ADA, which, again,
makes unlawful any employment "selection criteria that
screen out or tend to screen out an individual with a disability
or a class of individuals with disabilities unless . . . consistent
with business necessity." According to the majority, Lopez
failed to raise this argument prior to filing his petition for
rehearing, after the original opinion in this case issued. In the
majority's view, Lopez intended to prove his disparate impact
claim through the more common method of proving disparate
impact set out in Title VII discrimination cases. I disagree
with the majority that Lopez has waived his disparate impact
claim under § 12112(b)(6) of the ADA for failure to raise it
until his petition for rehearing.

First, Lopez expressly cited to and quoted § 12112(b)(6) in
multiple portions of his appellate and district court briefs. For
example, in Lopez's opening appellate brief, he argued that
"Title I of the ADA . . . is broad in scope . . . and expressly
prohibits employers from 'using qualification standards,
employment tests or other selection criteria that screen out or
tend to screen out an individual with a disability . . . .' "
Lopez further argued that the "one-strike/automatic lifetime
ban rule is a per se violation of the ADA" and that "[u]nder
the ADA, an employer 'discriminates' against an otherwise
qualified individual with a disability 'if the employer uses . . .
employment tests or other selection criteria that screen out or
tend to screen out an individual with a disability.' "

Lopez made similar arguments to the district court, belying
the majority's contention that Lopez has "deprive[d] us of the
assistance of our colleague below and [has] deprived Defen-
dant of the opportunity to meet [Lopez's] new argument in the

proper course." For example, Lopez argued that the ADA prohibits "[p]ractices which tend to 'screen out' applicants with disabilities." Plaintiff's Supplemental Memorandum of Points and Authorities re: Motions for Summary Judgment at 6, *Lopez v. Pac. Mar. Ass'n et al.*, No. 2:06-cv-04154-GW-JTL (C.D. Cal. Jan. 18, 2008), ECF No. 82 (citing § 12112(b)(6)). Lopez further argued that Congress was "express in [its] prohibition that employers may not deny work opportunities to individuals no longer engaged in drug use." *Id.* (citing § 12114(b)(1)). Pacific Maritime Association filed responses to Lopez's briefs, and the district court had an opportunity to consider both parties' arguments. *See, e.g.,* Defendants' Supplemental Brief in Support of Motion For Summary Judgment, *Lopez v. Pac. Mar. Ass'n et al.*, No. 2:06-cv-04154-GW-JTL (C.D. Cal. Feb. 7, 2008), ECF No. 90. Although the district court ultimately ruled in favor of Pacific Maritime Association, the district court expressly recognized in its decision that § 12112(b)[(6)] of the ADA prohibits employers from using employment criteria that "screen out or tend to screen out an individual with a disability." *Lopez v. Pac. Mar. Ass'n et al.*, No. 2:06-cv-04154-GW-JTL, Statement of Decision on Motions for Summary Judgment at 8 (C.D. Cal. Apr. 3, 2009), ECF No. 134 (quoting *Raytheon*, 540 U.S. at 54). The district court was clearly aware of Lopez's § 12112(b)(6) argument.

Second, although Lopez cited to *Watson v. Forth Worth Bank & Trust*, 487 U.S. 977, 994-95 (1988)—a Title VII race discrimination case—in his opening appellate brief, Lopez did so merely to outline the basic steps required to establish a prima facie case of disparate impact. Lopez did not argue that Title VII discrimination cases (and their attendant statistical proof requirement) govern the disposition of his case. Rather, Lopez expressly argued that, in contrast to Title VII discrimination cases, there is no requirement that plaintiffs offer statistical evidence of discrimination in disparate impact cases brought under the ADA. In Lopez's view, "[t]he District Court erroneously concluded that statistical evidence was

'required' to state a prima facie case of 'disparate impact' . . . . [Pacific Maritime Association's] lifetime ban on hiring as applied to rehabilitated drug/alcohol addicts is a *per se* violation of the ADA and does not require any statistical evidence to reach that conclusion."

Lopez continued to press his position in his reply brief, arguing that, "[t]here is no legal authority . . . supporting the District Court's decision that the 'statistical requirements' for [race, age, and gender discrimination] causes of action are applicable to a case brought by a rehabilitated addict."[4]

Moreover, despite the majority's contention to the contrary, Lopez expressly argued in district court that statistical evidence was not required in ADA disparate impact cases. *See, e.g.*, Plaintiff's Opposition to Defendants' Motion for Summary Judgment, or in the Alternative, Summary Adjudication at 19, *Lopez v. Pac. Mar. Ass'n et al.*, No. 2:06-cv-04154-GW-JTL (C.D. Cal. Sept. 5, 2007), ECF No. 54; Plaintiff's Reply to Defendants' Opposition to Plaintiff's Motion for Summary Judgment, or in the Alternative, Summary Adjudication at 6, No. 2:06-cv-04154-GW-JTL (C.D. Cal. Sept. 10, 2007), ECF No. 62. The district court disagreed, holding that "Plaintiff's argument that he can establish a claim of disparate impact . . . without proffering relevant statistical evidence must be rejected." *Lopez*, No. 2:06-cv-04154-GW-JTL at 20. Although I disagree with the district court's conclusion, it is clear from the previous statement that the district court had an opportunity to consider Lopez's arguments.

---

[4]Lopez's citation to the statistical evidence discussion in *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971), is not a concession that a statistical showing is required to prove his disparate impact claim. Instead, Lopez emphasized that, although statistical proof is not required in ADA cases (unlike Title VII discrimination cases), a plaintiff *may* use statistics to bolster his case. Lopez merely argues that *if* a plaintiff *chooses* to proffer statistical evidence, cases such as *Griggs* are relevant to the court's analysis.

In light of the foregoing, I believe Lopez has sufficiently argued that he has a disparate impact claim under § 12112(b)(6) of the ADA, that Title VII race discrimination cases do not entirely govern the disposition of his case, and that statistical evidence is not required in ADA cases such as this. Moreover, Pacific Maritime Association had an opportunity to respond to Lopez's arguments in the district court and on appeal, and the district court reached a reasoned decision below. I thus cannot agree with the majority's conclusion that Lopez has waived his disparate impact claim under § 12112(b)(6) of the ADA.